**Maria Manga,**
615 Sheridan Street, NW
Washington, DC  20011
(202) 413-3374
Ritastar2018@gmail.com

**Clerk of Court**
U.S. District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC  20001

**RE: Filing of Civil Complaint – Maria Manga, *pro se* v. U.S. Small Business Administration**

Dear Clerk of Court:

Please find enclosed the following documents for filling in the above-referenced matter:

1. An ongoing signed complaint and Petition for Enforcement
2. Supporting exhibits

This action is filed *pro se* and relates to a federal employment dispute, specifically the agency's failure to comply with a prior court order and resulting violations of my civil and workplace rights.

Please find the enclosed document accordingly. If any further information is required, please do not hesitate to contact me at the number listed.

Thank you for your assistance.

Respectfully,

Maria Manga

RECEIVED

JUL 2 5 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**IN THE UNITED STATES OF AMERICA
FOR THE DISTRICT OF COLUMBIA**

MARIA MANGA,

    Plaintiff

    v.

SMALL BUSINESS
    ADMINISTRATION,

    Agency

DOCKET NUMBER
CIVIL ACTION: NO. 25-214 (UNA)

PLAINTIFF'S STATEMENT IN SUPPORT OF PETITION FOR ENFORCEMENT AND REQUEST RELIEF

### I.    Background

Plaintiff respectfully files this Petition to enforce compliance with a prior Merit Systems Protection Board (MSPB) order and to seek redress for the Agency's continued failure to comply. Despite repeated requests and legal efforts, the Agency has ignored lawful directives and caused severe harm to Plaintiff's professional and personal well-being. Plaintiff has served the Agency for several years and faced a hostile, biased, and disrespectful work environment. Attempts to resolve the issue through the MSPB have been met with further inaction. Plaintiff has taken this matter to federal court to restore dignity, respect, and to ensure accountability.

As a federal employee, Plaintiff has the right to a workplace free from retaliation, bias, and disregard for court orders. Despite efforts to secure counsel and multiple communications to the Agency and the MSPB, no adequate action was taken. Plaintiff was forced to act independently to pursue justice.

### II.    Legal Representation Efforts

Despite all diligent efforts made by Plaintiff to secure adequate legal representation, the current attorney who represents Plaintiff in the MSPB case did not immediately submit a notice of appearance to this Court, thereby missing the required deadline. This omission has further delayed the proceedings and compounded the ongoing harm Plaintiff has experienced.

RECEIVED

JUL 2 5 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### III.    Argument

The Agency's refusal to comply with legal orders and its continued disregard for Plaintiff's right has led to significant professional setbacks, including missed promotion to GS-15, reputational harm, emotional distress, and physical deterioration.  Plaintiff has endured pain, mental suffering, and economic hardship as a result of this prolonged mistreatment.

### Conclusion

For the reasons set forth above, Plaintiff turns to this Court for justice, seeking enforcement of rights long denied.  Despite numerous efforts to compel the Agency to comply with a lawful order, Plaintiff has been met with ongoing indifference, harm, and denial of due process. Plaintiff is pleaded to this Court to review the entire record and evidence already submitted.

Accordingly, Plaintiff respectfully requests that this Court:

- Enter a default judgement against the Small Business Administration;
- Award $10,000,000 in compensatory damages for emotional distress, reputational harm, and loss of enjoyment of life;
- Award $25,000,000 in punitive damages to punish and deter the Small Business Administration for its willful, malicious, and repeated violations of federal law and employee rights;
- And grant any additional relief this Court deems just and proper.

Respectfully submitted,

Maria Manga, Plaintiff *pro se*
615 Sheridan Street, NW
Washington, DC  20011

## CERTIFICATE OF SERVICE

I hereby certify that on the attached documents were submitted to the Clerk of Court for the United States District Court for the District of Columbia on this day, **July 25, 2025.**

Respectfully submitted,

Maria Manga, *pro se*
615 Sheridan Street, NW
Washington, DC 20011
202-413-3374
Ritastar2018@gmail.com

DOCKET NO. 25-214 (UNA)

# ATTACHMENTS

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MARIA MANGA,

    Appellant and Petitioner

    v.

SMALL BUSINESS
    ADMINISTRATION,

    Agency.

DOCKET NUMBER
PH-0752-17-0096-I-1

DATE: July 9, 2025

**PETITION FOR ENFORCEMENT**

COMES NOW Appellant Maria Manga ("Petitioner") and files this petition under 5 C.F.R. §§ 1201.181-183 for this board to enforce the Final Order in this case which was issued on July 10, 2024. Petitioner Maria Manga states as follows:

1.    On July 10, 2024, this Merit Systems Protection Board (the "Board") filed its Final Order in this case in which it ordered the Agency "to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision." The Board also stated in that same paragraph (number 42 of the Order): "We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision."

2.    On August 23, 2024, the attorney for the Petitioner sent the Agency the Petitioner's calculation of back pay and interest (Exhibit A), the amount being $908,761.78.

3.      On August 30, 2024 the Agency responded to Petitioner's August 23rd email, not disputing Petitioner's calculation of back pay and interest (Exhibit A).

4.      Paragraph 43 of the Board's Order, states: "We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the Agency about its progress. *See* 5 C.F.R. § 1201.181(b)."

5.      On September 4, 2024, having not been notified, the attorney for the Petitioner asked the Agency about its progress (Exhibit A).

6.      On September 5, 2024, the Agency responded that it found that Ms. Manga had worked and received a paycheck from one additional Federal job (Exhibit A).

7.      After deducting $5,058.89 for work she had performed for the Agency in 2021, on September 6, 2024, Petitioner sent a revised total due of $903,702.89 which was not disputed by the Agency (Exhibit A).

8.      Having not received a sufficient answer from the agency on its progress, attorney for the petitioner drafted and sent a Petition for Enforcement (and Motion for Attorney Fees) to petitioner, Ms. Maria Manga, dated September 6, 2024 (Exhibit B) who sent them for filing by regular U.S. mail.

9.      On September 24, 2024, attorney for the Petitioner registered on MSPB e-Appeal through which attorney for Petitioner and the Agency exchanged filings on the Board's orders through September and October 2024 (Exhibit C).

10.     On October 25, 2024, attorney for the Petitioner filed a Request for Extension of Time. For the reasons stated therein, Petitioner requested an extension of 90 days for all filings. That request was never responded to by the Board.

11.     In November of 2024, Petitioner notified the attorney for the Petitioner that she was releasing him as her attorney, and Petitioner personally filed her letter stating so to the Board, which was recorded by the Board on November 26, 2024.

12.     On December 11, 2024 the U.S. Equal Employment Opportunity Commission (EEOC) issued a decision on the Petition for Enforcement in this case which it had received from the Petitioner, Ms. Manga (Exhibit D). The sixth paragraph of that EEOC Decision states:

> It appears that Petitioner submitted a Petition for Enforcement and motion for attorney's fees with the MSPB on September 6, 2024, and a motion for compensatory damages on September 13, 2024.

The EEOC Decision also states: "Petitioner filed the instant petition on October 22, 2024."

13.     That EEOC Decision in its Analysis and Conclusion stated that it denied consideration of the petition for review, because "she is requesting enforcement of the Board's Final Order," and that the "Commission does not enforce remedial orders of the MSPB," continuing that they "have no jurisdiction to review the instant petition."

14.     The MSPB e-Appeal Case Record (Exhibit C) does not list having received the Petitioner Ms. Manga's mail filings of the Petition for Enforcement or the motion for attorney's fees of September 6, 2024. The cover sheet on the EEOC's Decision does indicate, however, that the MSPB clerk apparently received the petition, or at least the EEOC's Decision on the petition, on December 18, 2024, with the last page showing mail sent from the EEOC date stamped received December 11, 2024, and received by the clerk of the Board dated December 18, 2024.

15.     On December 16, 2025 the Petitioner wrote and sent a letter to the Board, entitled "Complaint" in which she, among other things, requested additional time to secure counsel. (Exhibit E). In that letter, the Petitioner also expressed her fears and concerns and respectfully

requested that the Board urge the Administrative Judge Daniel F. McLaughlin to recuse himself from her case. The MSPB did not record that either.

16.    On January 10, 2025, the Board issued an Initial Decision, which was the last filing in this case, having not ruled on Petitioner's request for an extension of 90 days, having not ruled on Petitioner's Petition for Enforcement, and knowing that the Petitioner was now representing herself pro se.

17.    On, January 24, 2025, Petitioner filed a lawsuit on this matter in the United States District Court for the District of Columbia, Civil Action No. 25-214 (UNA), representing herself in this case pro se. Having not acquired an attorney to represent her, and the court indicating that her case is possibly premature, and indicating that it may be filed at a later date, Petitioner filed for an extension of time in that case, which was granted until August 15, 2025.

18.    On January 27, 2025, Petitioner sent a letter to the Board expressing her desire to rehire her same attorney to continue with her case (Exhibit F).

19.    Attorney for the Petitioner files this second Petition for Enforcement with the Board.

20.    The amount of back pay and interest minus outside earnings due by the Agency to the Petitioner is $951,041.96 (Exhibit G).

WHEREFORE, Petitioner requests immediate payment of back pay and interest of $951,041.96 in fulfillment of the Final Order.

Respectfully submitted,

/s/ *Kevin Zieleniewski, Esq.*
Kevin Zieleniewski, Esq.
Attorney for Appellant, Petitioner Maria Manga
1629 K Street NW; Suite 300
Washington, DC 20006
Email: kevin.zielen@alspc.com
Telephone: (202) 445-0099

Docket Number: PH-0752-17-0096-I-1
Party Type: Appellant


Maria Manga
615 Sheridan Street, NW
Washington, DC 20011

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MARIA MANGA,<br><br>         Appellant, | DOCKET NUMBER<br>PH-0752-17-0096-I-1 |
|    v. | |
| SMALL BUSINESS<br>   ADMINISTRATION,<br>          Agency. | DATE:  July 10, 2024 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kevin Zieleniewski, Esquire, Washington, D.C., for the appellant.

Michael D. Hall. Sr., Riverdale, Maryland for the appellant.

Claudine Landry, Esquire; Richard Lloyd Peterson, Esquire, and
   Ashley E. Obando, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained her removal. For the reasons discussed below, we GRANT the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

2

appellant's petition for review and REVERSE the administrative judge's decision to sustain the removal action. The appellant's removal is REVERSED. We clarify the correct analytical framework for the appellant's Title VII affirmative defenses, and we FIND that the appellant proved her affirmative defenses of disability discrimination based on disparate treatment and failure to accommodate.

## BACKGROUND

¶2   The appellant worked as a GS-1101-12 Business Opportunity Specialist in the agency's Baltimore District Office. Initial Appeal File (IAF), Tab 1 at 1, Tab 11 at 4, Tab 28 at 58. On October 29, 2015, the appellant collapsed at work and was hospitalized. IAF, Tab 6 at 40. She spent a period at the hospital, then transferred to a rehabilitation facility, and was subsequently released to complete outpatient physical therapy several times a week. *Id.* at 108-19, 212-20. Her communication with her supervisor was spotty during this time, but she submitted leave requests and medical documentation in December 2015 showing that she had experienced, among other things, "[m]uscle weakness, balance and walking problems," and her medical provider indicated that she would remain incapacitated until December 28, 2015. *Id.* at 108-19, 212-20, 226-234. The agency granted the appellant sick leave through December 25, 2015, as well as an additional week of annual leave that the appellant had requested, ending on January 4, 2016. *Id.* at 58-59. The appellant, however, never returned to work.

¶3   The appellant's December 2015 medical documentation also stated that when she did return to work, it was "absolutely medically necessary" to reassign her to the agency's Washington, D.C. District Office because of the length of her commute to the Baltimore District Office. *Id.* at 214. The agency requested clarification as to whether the appellant was requesting a reasonable accommodation and asked her to provide additional information. *Id.* at 172-73. The appellant provided a January 6, 2016 letter from her physician, Dr. G.,

stating that the appellant was "requesting a reasonable work accommodation" and explaining that she was still experiencing limited mobility and required assistive devices to move about; that the length of her commute to the Baltimore District Office had caused her to lose sleep and may have triggered her collapse and ensuing medical condition, of which the working diagnosis was "conversion reaction attributable to an untenable work situation and sleep deprivation;" and that she was capable of performing her job functions if she did not have an onerous commute. *Id.* at 162. In mid-January 2016, the agency informed the appellant that it wished to send her request to the Federal Occupational Health Service (FOH) to assist in recommending accommodations and requested that she provide specific additional documentation to provide to FOH, but the appellant did not respond. *Id.* at 158-59.

In mid-February 2016, the agency informed the appellant that it was closing her reasonable accommodation case because she had not submitted the FOH paperwork, and it was unable to determine whether she had a disability or the specific accommodation she was requesting. *Id.* at 134-35. The letter provided her with an opportunity to request reconsideration of the decision, but she did not respond. *Id.* at 134. In early March 2016, the agency informed the appellant's representative that it did not believe that Dr. G.'s January 6, 2016 letter supported her absences but that it was still amenable to discussing reasonable accommodation. *Id.* at 90-96. The appellant subsequently requested accommodation in the form of office furniture, to which the agency responded that it had already provided the requested furniture and that the appellant should respond if she was seeking additional accommodation. *Id.* at 72, 74-75, 88. The appellant again did not respond.

Throughout this period, the appellant had submitted additional requests for leave from January through March 2016, but the agency told her numerous times that it did not find that her medical documentation restricted her from working in the Baltimore District Office and to provide additional information to this effect.

*Id.* at 90-96, 103-105, 128, 137, 156, 164. Per the agency, the appellant did not do so, and in early March 2016 the agency notified her that it was documenting her status from early January to early March 2016 as absent without leave (AWOL). *Id.* at 81-83. The agency continued to carry her in an AWOL status and eventually proposed her removal in late April 2016 for AWOL and failure to follow leave procedures (two specifications) from January 4, 2016, until April 27, 2016. *Id.* at 58-63. The appellant replied to the notice, and on November 2, 2016, the agency issued a decision sustaining her removal. *Id.* at 40-45, 51-52.

¶6        The appellant filed a timely appeal with the Board challenging her removal and raising affirmative defenses of disparate treatment on the bases of age, national origin, sex, and disability; retaliation for prior EEO activity; and failure to provide reasonable accommodation for her disability. IAF, Tab 1 at 7-8, Tab 52 at 3. After holding the requested hearing, the administrative judge issued an initial decision affirming the agency's action. IAF, Tab 62, Initial Decision (ID) at 1. The administrative judge found that the agency proved its AWOL charge and the second specification of the failure to follow leave procedures charge, ID at 16-20, the removal promoted the efficiency of the service, ID at 20-22, and the appellant did not prove her affirmative defenses, ID at 22-24.

¶7        The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency filed a response, and the appellant filed a reply. PFR File, Tabs 3, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8        On petition for review, the appellant argues that the initial decision should be reversed because the administrative judge did not provide reasoning based on case law, his ruling was "without regard [for] the letter of the law and the spirit of the law," and the decision lacked fairness and empathy. PFR File, Tab 1 at 1-2. Although the appellant does not identify any specific error in the initial decision, she cites numerous statutes, Board decisions, and Equal Employment Opportunity

Commission (EEOC) guidance in support of her argument that the agency subjected her to discrimination, retaliation, and harassment, and violated her due process rights. *Id.* at 3. For the reasons discussed below, we agree with the appellant that the removal action must be reversed.

The agency's AWOL charge cannot be sustained because the appellant provided administratively acceptable evidence that she was incapacitated for duty at her duty station.

¶9      To prove a charge of AWOL, an agency must show that the employee was absent without authorization and, if the employee requested leave, that the agency properly denied the request. *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 7. An agency may require a medical certificate to substantiate a request for sick leave of more than 3 workdays. 5 C.F.R. § 630.405(a). A charge of AWOL will not be sustained if the appellant presents administratively acceptable evidence that she was incapacitated for duty during the relevant period and if she has sufficient sick leave to cover the period of absence. *Valenzuela v. Department of the Army*, 107 M.S.P.R. 549, ¶ 9 (2007); *see* 5 C.F.R. § 630.405(b) (indicating that an agency may deny a request for sick leave when an employee fails to provide properly requested administratively acceptable evidence). An agency may find documentation insufficient if it does not provide the requested information regarding the nature of the appellant's illness and the effect her illness had on her ability to work. *Rison v. Department of the Navy*, 23 M.S.P.R. 118, 123 (1984), *aff'd*, 765 F.2d 162 (Fed. Cir. 1985) (Table).

¶10     In this case, the appellant does not dispute that she was absent from work between January 4, 2016, and April 27, 2016. ID at 17. However, as noted above, the record shows that the appellant requested both sick and annual leave from January 4, 2016, going forward and that the agency denied her requests. ID at 17; IAF, Tab 6 at 90-96, 103-105, 128, 156, 164. Therefore, the critical question is whether the agency's denials of her leave requests were proper.

¶11  .    In the initial decision, the administrative judge found that the agency properly denied the appellant's leave requests from January 4, 2016, onward because she did not submit any medical documentation stating that she was incapacitated from working and that, instead, the appellant's medical information confirmed that she had "sufficiently recovered" by December 28, 2015. ID at 17. Although the administrative judge noted that the appellant's medical records discussed allowing her to work out of the agency's Washington, D.C. District Office, he found that the appellant's physician, Dr. G., failed to identify a medical condition that established a clear medical need for her to do so, or that otherwise prevented her from being able to perform her job duties in the Baltimore District Office. ID at 17-18. The administrative judge also concluded that the appellant's absences were not excused under the Family and Medical Leave Act of 1993 (FMLA) in part because she did not prove that she suffered from a serious health condition after December 2015 that prevented her from performing her job duties. ID at 18-19.

¶12      However, we find that the appellant's medical documentation clearly explained that she was incapacitated for duty at the Baltimore District Office during this time. Dr. G.'s January 6, 2016 letter stated that the appellant was likely suffering from "conversion reaction attributable to an untenable work situation and sleep deprivation," which limited major life activities like mobility, ambulation, and sleep. IAF, Tab 6 at 162. He explained that, although at the time of his letter many of the appellant's symptoms had improved and he believed she was capable of doing her job out of the agency's Washington, D.C. District Office, the appellant would exacerbate her symptoms, leading to a relapse, if she were to resume her long commute to Baltimore. *Id.* Dr. G., in essence, found that the appellant's lengthy commute from her home in Washinton, D.C. to the agency's Baltimore District Office had caused her sleep deprivation, which in turn exacerbated her conversion disorder, but that she could probably work from the agency's Washington, D.C. office instead. *Id.* The administrative judge's

finding that Dr. G. "failed to identify an existing medical condition" that required the appellant to work out of the Washington, D.C. office, and the appellant's supervisor's contention that Dr. G.'s letter did not state that she was "unable to report to work," are incorrect given this explicit discussion. ID at 18; IAF, Tab 6 at 126, 162. Additionally, in a letter dated March 8, 2016, Dr. G. reiterated his opinion that the appellant "could be working in the D.C. office" but that the accommodations he had recommended were "medically necessary." *Id.* at 88.

¶13    Consequently, we disagree with the administrative judge and find that the appellant presented administratively acceptable evidence of her incapacity to work out of the agency's Baltimore District Office. ID at 162; *see Atchley v. Department of the Army*, 46 M.S.P.R. 297, 303 (1990) (explaining that if the doctor's diagnosis, determination of the appellant's work restrictions, and understanding of the appellant's condition were accurate, it would "logically follow that the appellant was incapacitated for duty" and holding that the appellant submitted administratively acceptable evidence of incapacity). The appellant provided a letter from a licensed physician, with whom she had a longstanding relationship, that contained a medical diagnosis, a description of her symptoms, and an explanation of how this condition prevented her from reporting to her duty station in Baltimore. *Compare Lawley v. Department of the Treasury*, 84 M.S.P.R. 253, ¶¶ 22-23 (1999) (finding that the appellant's medical documentation, which stated that she required time off because of emotional stress that was work related and due to problems with her supervisor, failed to indicate that she was incapacitated for duty), *with Patterson v. Department of the Air Force*, 74 M.S.P.R. 648, 652-58 (1997) (finding the appellant's detailed medical evidence, which indicated the reasons why she was completely unable to work due to problems with her supervisors, a diagnosis, and a prognosis of when she could return to work, established that she was incapacitated for duty).

¶14    As mentioned above, to overcome a charge of AWOL, an appellant must generally present administratively acceptable evidence of incapacitation for the

relevant period *and* have sufficient sick leave to cover the period of absence. *Valenzuela*, 107 M.S.P.R. 549, ¶ 9; 5 C.F.R. § 630.401. Here, the record indicates that the appellant only had enough available sick leave to cover her absences through the end of February 2016. IAF, Tab 6 at 137. The appellant also requested annual leave for this period, but the agency denied her request because her absence was having an impact on the distribution of work in the office. *Id.* at 92, 103-05. Although the agency informed the appellant of what she needed to do to invoke the FMLA to use annual leave in place of sick leave, it does not appear that the appellant ever invoked the FMLA or requested leave without pay (LWOP) for the period covered by the AWOL charge. *Id.* at 59, 91-92, 98, 103-05, 128, 138, 156, 164. Nevertheless, we note that authorization of LWOP is within the agency's discretion. *Oates v. Department of Labor*, 105 M.S.P.R. 10, ¶ 11 (2007). Further, here, the agency specifically denied the appellant's leave requests because it erroneously concluded that her medical documentation did not support her incapacitation from working at the Baltimore District Office. IAF, Tab 6 at 91-92, 95. In fact, it explicitly informed her that it "reserve[d] the right to change her leave if the medical documentation supports her incapacitation." *Id.* at 90. Had the agency properly acknowledged that the appellant's medical documentation supported her incapacitation from working out of the Baltimore District Office and as discussed further below, properly acknowledged and engaged with her request for a reasonable accommodation, leave would not have been an issue. Thus, the agency's denial of leave, and handling of the appellant's situation generally, was not reasonable under the circumstances.

¶15    Accordingly, the AWOL charge may not be sustained.

### The failure to follow leave procedures charge cannot be sustained.

¶16    As noted above, the agency also charged the appellant with failure to follow leave procedures (two specifications). IAF, Tab 6 at 60. Agencies may take disciplinary action against an employee based on her failure to follow

leave-requesting procedures and her use of unscheduled leave provided she is clearly on notice of such requirements and the likelihood of discipline for continued failure to comply. *Valenzuela*, 107 M.S.P.R. 549, ¶ 9. In the initial decision, the administrative judge only sustained the second specification of this charge. ID at 19-20. On review, the agency does not challenge his findings as to the first specification, and thus, only the second specification is at issue. *See* PFR File, Tab 3.

¶17    Under specification 2, the agency alleged that the appellant failed to follow leave procedures because she "failed to provide medical certification, signed by a registered practicing physician or other practitioner, certifying [her] incapacitation." IAF, Tab 6 at 60. As explained above in connection with the AWOL charge, this allegation is demonstrably untrue. As a result, this charge cannot be sustained.

¶18    Because neither charge can be sustained, the appellant's removal must be reversed.

We agree with the administrative judge that the appellant did not prove her affirmative defenses of disparate treatment on the basis of age, national origin, or sex.

¶19    After the initial decision was issued, the Board clarified the proper analytical framework for adjudicating age, national origin, and sex discrimination claims under Title VII. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 21-25. Under *Pridgen*, the appellant bears the burden of proving by preponderant evidence that her age, national origin, or sex was a motivating factor in her removal. *Pridgen*, 2022 MSPB 31, ¶ 21. A finding that prohibited discrimination played "any part" in the contested action is the same as a finding of "motivating factor." *Id.* In the initial decision, the administrative judge found that the appellant failed to present any evidence supporting her claims of disparate treatment on the basis of age, national origin, or sex. ID

at 22-23. We agree and find that the appellant did not show that her age, national origin, or sex were motivating factors in her removal. *Id.*

We agree that the appellant did not prove her affirmative defense of retaliation for protected EEO activity.

¶20    In finding that the appellant did not show that the agency retaliated against her for her prior EEO activity, the administrative judge applied the standard set forth in *Cloonan v. U.S. Postal Service*, 65 M.S.P.R. 1, 4 (1994), which requires, among other things, that the appellant establish a "genuine causal connection" between the alleged retaliation and the contested employment action. ID at 23-24. However, after the initial decision was issued, the Board also clarified the analytical framework for addressing claims of EEO retaliation. In *Pridgen*, the Board held that claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims, as set forth above. *Pridgen*, 2022 MSPB 31, ¶ 30; *see also Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 32.

¶21    Here, analyzing the appellant's claim under the correct evidentiary standards and framework, we find that the administrative judge properly concluded that the appellant did not prove her affirmative defense of retaliation for prior EEO activity. The appellant did not show that the officials involved in the removal action were aware of her prior EEO activity or that any agency employee with knowledge of her EEO activity influenced the officials' decisions. *See* ID at 23-24. Our review of the record reflects that the appellant did not present any evidence other than conclusory allegations in support of her retaliation claim. Thus, the appellant did not establish that her prior EEO activity was a motivating factor in her removal.[2]

---

[2] Because we discern no error with the administrative judge's motivating factor analysis or conclusions regarding the appellant's above-discussed discrimination and retaliation claims, it is unnecessary for us to address whether discrimination or retaliation on these bases were a but-for cause of the removal action. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-25.

11

### The appellant is a qualified individual with a disability.

¶22      As noted above, the appellant also alleged that the agency subjected her to disparate treatment on the basis of her disabilities, which she identified as depression, stress, and anxiety, and that the agency discriminated against her by failing to accommodate her disabilities. IAF, Tab 52 at 3. With regard to these issues, the administrative judge found that although the appellant "had been experiencing some mobility issues early on," she did not establish that she had a disability at any point in time between December 28, 2015 and the date of her removal, and thus that she did not show that she was an individual with a disability. ID at 23. He therefore found that she did not establish either of her claims. ID at 23-24. As discussed below, we disagree.

¶23      The Americans with Disabilities Act (ADA)[3] provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. To prove disability discrimination, an appellant must first establish that she is an individual with a disability. *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012). To prove that an appellant is an individual with a disability, she must show that she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g). Major life activities include sleeping, walking, and standing. 29 C.F.R. § 1630.2(i)(1)(i). The impairment must substantially limit the ability of the individual to perform a particular major life activity as compared to most people in the general

---

[3] The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. The standards under the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008, have been incorporated into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. *Id.*

12

population. 29 C.F.R. § 1630.2(j)(1)(ii). "Substantially limits" is not meant to be a demanding standard, 29 C.F.R. § 1630.2(j)(1)(i), and the definition of disability is to be "construed in favor of broad coverage of individuals," to the maximum extent permitted by the terms of the ADA, as amended by the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.1(c)(4).

¶24        In this case, the appellant alleged that stress was the cause of her October 29, 2015 collapse at work and ensuing hospitalization, as well as the period of weakness and limited mobility thereafter. IAF, Tab 41 at 8, 82, Tab 59, Hearing Compact Disc (HCD) at 4:21 (testimony of the appellant). As discussed above, Dr. G. observed in December 2015 that the appellant was experiencing limited mobility in her lower extremities and would remain incapacitated until December 28, 2015. IAF, Tab 6 at 212-20. In his January 6, 2016 letter stating that the appellant was requesting an accommodation, Dr. G. specifically discussed the appellant's continued restricted mobility, explaining that she had limited mobility and strength in her lower extremities, required "assistive devices for ambulation," and that her condition was improving but "far from baseline." *Id.* at 162. Dr. G. explained that although the appellant's condition had been difficult to diagnose, the "working diagnosis" for her lower extremity weakness was conversion reaction attributable to an untenable work situation and sleep deprivation, as it related to her onerous commute to Baltimore. *Id.* In his March 8, 2016 letter, Dr. G. wrote that the appellant was still having low back pain and that his previously mentioned accommodations were "medically necessary." *Id.* at 88.

¶25        Under the broad coverage contemplated by the ADAAA, we find that the documentation the appellant provided was sufficient to conclude that she had a physical impairment that substantially limited at least one major life activity. *See* 29 C.F.R. § 1630.2(h) (including any physiological or mental or psychological condition in the definition of a physical impairment); 29 C.F.R. § 1630.2(i)(1)(i)

(including walking and standing as major life activities). Although the administrative judge focused on Dr. G.'s March 8, 2016 comment that the appellant had "some continued low back pain," her earlier medical documentation as described above indeed shows that her condition was sufficiently severe, for a period of at least 2 months, to conclude that she was disabled at the time she requested reasonable accommodation. IAF, Tab 6 at 88, 162, 212-20. To this end, the regulations explicitly state that "transitory and minor" conditions are not excluded from coverage under this definition of disability.[4]    29 C.F.R. § 1630.2(j)(ix). As such, we conclude that the appellant was an individual with a disability.[5]

¶26        Both a claim of disability discrimination based on an individual's status as disabled and a claim based on the agency's failure to reasonably accommodate that disability require that the individual be "qualified." *Haas*, 2022 MSPB 36, ¶ 28. To be a qualified individual with a disability, the appellant must show that she can "perform the essential functions of the . . . position that [she] holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8). In this case, we also conclude that the appellant was a qualified individual with a disability because her medical documentation does not suggest, nor has either party alleged, that she could not perform the essential functions of her position with or without reasonable accommodation.[6] *See* IAF, Tab 6 at 88, 162. Indeed,

---

[4] In the initial decision, the administrative judge should have, at a minimum, evaluated whether the appellant met one of the remaining definitions of disability. To establish disability discrimination on the basis of a failure to accommodate, the appellant must establish coverage under the "actual disability" or the "record of" prongs of the definition of disability, whereas she need only establish coverage under the "regarded as" prong of the definition of disability in order to prove a claim of disparate treatment discrimination. 29 C.F.R. § 1630.2(g)(1)-(3).

[5] Even if the agency was unfamiliar with the appellant's condition, conversion disorder, it could have sought additional information about the condition. In any event, Dr. G.'s notes were clear about its impact on the appellant.

[6] Because the record is fully developed as to the appellant's disability discrimination affirmative defenses, the Board can analyze the claims without remand. *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016).

Dr. G. repeatedly indicated that he believed that the appellant could perform her job functions without an onerous commute. *Id.* at 162. The appellant testified at the hearing that Dr. G. said she was still able to work and that she wanted to work. HCD at 5:12 (testimony of the appellant). The agency does not argue or point to anything in the record that refutes this evidence. In fact, the appellant's supervisor indicated at the hearing that he believed that the appellant could perform the essential functions of her position. HCD at 48:14 (testimony of the appellant's supervisor). The deciding official also acknowledged that the appellant was capable of working. HCD at 1:56:50 (testimony of the deciding official). Accordingly, we find that the appellant is a qualified individual with a disability.

The agency failed to reasonably accommodate the appellant.

¶27    Because the administrative judge found that the appellant was not an individual with a disability, he concluded that she did not prove that the agency improperly denied her a reasonable accommodation. ID at 24. To establish disability discrimination based on a failure to accommodate claim, an employee must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2015). As explained above, we find that the appellant proved that she is a qualified individual with a disability. Therefore, the relevant question here is whether the agency failed to provide the appellant with reasonable accommodation.

¶28    An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. 29 C.F.R. § 1630.9(a); *see Miller*, 121 M.S.P.R. 189, ¶ 13. Reasonable accommodation includes modifications to

the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13; EEOC Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html (last visited July 9, 2024).

¶29    Once an appellant has requested an accommodation, the employer must engage in an interactive process to determine an appropriate accommodation. *Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 17 (2011). "The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. part 1630, appendix, § 1630.9. In this case, the record is clear that the agency did not properly engage in the interactive process. Dr. G.'s January 6, 2016 letter was sufficient to apprise the agency of the appellant's disability, contained an explicit request for reasonable accommodation, and was more than adequate for the agency to move to the next step of the interactive process. *See* IAF, Tab 6 at 162. It is well-established that a request for telecommuting or a shorter commuting time because of a disability triggers an agency's responsibility under the Rehabilitation Act. *See, e.g., Barney G. v. Social Security Administration*, EEOC Appeal No. 2021000802, 2022 WL 4546523, at *8 n.6 (Sept. 12, 2022). Although, as the administrative judge pointed out, the appellant did not respond to the agency's subsequent request to submit her case to the FOH, notably, the agency's request did not state that the agency needed further information or that the appellant's request would be denied if the matter were not submitted to the FOH. ID at 24; IAF, Tab 6 at 158.

¶30    In the agency's February 6, 2016 letter closing the appellant's reasonable accommodation case, it specified that it was denying her request because she had not informed her supervisor "verbally or in writing what specific reasonable accommodation [she was] requesting," and because her medical documentation

did not "identify" her medical condition. IAF, Tab 6 at 134. As explained above, these justifications are clearly incorrect. Although the agency also later told the appellant that it was still open to reasonable accommodation discussions, it still maintained that she needed to submit additional information supporting her request. *Id.* at 91. However, the EEOC's Enforcement Guidance states that an employer cannot ask for documentation when the individual has already provided the employer with sufficient information to substantiate that she has a disability and needs the reasonable accommodation requested. *See* EEOC Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, Question 8 (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html (last visited July 9, 2024). We therefore find that the agency did not properly engage in the interactive process.

¶31      Nevertheless, a failure to engage in the interactive process alone does not violate the Rehabilitation Act; rather, the appellant must show that this omission resulted in a failure to provide reasonable accommodation. *Sanchez*, 117 M.S.P.R. 155, ¶ 18. In other words, the appellant must establish that a reasonable accommodation existed. *See Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 17 (2014) (finding that an appellant's mere assertion that the agency could have allowed him to use specific software was insufficient to establish his burden that an accommodation existed and was reasonable); *see also Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1137-39 (9th Cir. 2001) (finding an employer liable for denial of reasonable accommodation when it failed to engage in the interactive process which caused the denial of an effective accommodation).

¶32      Here, the appellant repeatedly identified what she believed to be an effective accommodation, i.e., to be reassigned to the Washington, D.C. District Office. IAF, Tab 6 at 162, 214; HCD (testimony of the appellant). As Dr. G. specifically explained in his January 6 letter, he believed that an accommodation

to help the appellant perform her work duties was one where "she did not have an onerous commute." IAF, Tab 6 at 162. He explained that "the major cause of [the appellant's] current condition related to her being transferred" to a new city (Baltimore), resulting in "significant and dangerous sleep deprivation" that "adversely affect[ed] her performance," but that he believed she would be capable of doing her job out of the agency's Washington, D.C. office, where she would not have a long commute. *Id.* Based on the record before us, it appears that a reassignment to the Washington, D.C. District Office would have been an effective accommodation, especially given that the appellant had previously worked out of the Washington D.C. District Office without issue. We acknowledge, however, that she did not identify any available vacancies in the Washington, D.C. District Office. *Clemens*, 120 M.S.P.R. 616, ¶ 17.

¶33    Nonetheless, Dr. G. specified that an effective accommodation for the appellant was one where *"she did not have an onerous commute."* IAF, Tab 6 at 162 (emphasis added). Although the record indicates that the appellant did not specifically request telework as a reasonable accommodation, she testified at length at the hearing that she had previously requested to telework, at least in part due to her commute, and that she also wanted to work from home during the disputed period. HCD at 4:04 (testimony of the appellant). The appellant testified that most of her colleagues teleworked and that she could do the same work that she was doing in the office from her home. HCD at 4:12 (testimony of the appellant); *see also* IAF, Tab 41 at 8. Although the deciding official testified that telework is granted at a manager's discretion and that typically employees do not telework until they have been employed with the agency for 1 year, the appellant had been working at the Baltimore District Office for over a year at the time of her medical incident. HCD at 1:45 (testimony of the deciding official). Additionally, while the appellant testified that her supervisor told her that telework is a "privilege," and the agency's hearing questioning suggests that the appellant may have told her supervisor at one point in time that she did not have a

reliable internet connection, there is no testimony or other evidence in the record indicating that telework was unavailable to the appellant. HCD at 4:11, 5:14:15 (testimony of the appellant). And telework, like the appellant's request to change duty stations, certainly would have accommodated her ambulation, sleep, and commute issues. *See* IAF, Tab 6 at 162.

¶34    In sum, although we cannot conclusively say that a reassignment to the Washington, D.C. District Office would have been an effective and reasonable accommodation, we find that had the agency correctly handled the appellant's medical documentation and properly engaged in an interactive reasonable accommodation process, that telework, at the least, would have been an effective accommodation such that the appellant would not have an onerous commute.[7] The agency, however, failed to properly engage in the interactive process and thus did not provide the appellant with a reasonable accommodation. Accordingly, we find that the appellant proved her claim of disability discrimination on the basis of a failure to reasonably accommodate.

The appellant proved that disability discrimination was a but-for cause of her removal.

¶35    As noted above, the appellant also raised a claim of status-based disability discrimination. ID at 23. In *Pridgen*, 2022 MSPB 31, ¶ 42, the Board clarified that disparate treatment disability discrimination claims should be analyzed under the same analytical framework as disparate treatment discrimination claims under Title VII. Thus, consistent with the above, the appellant bears the burden of proving by preponderant evidence that her disability was a motivating factor in the removal action. *Pridgen*, 2022 MSPB 31, ¶ 40. However, to obtain the full measure of relief available under the statute, the appellant must show that such

---

[7] Additionally, extending the appellant's leave could have also been a reasonable and effective accommodation, which the agency refused to do. *See* EEOC Notice No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act* (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html (last visited July 9, 2024).

discrimination was a but-for cause of the employment outcome. *Id.*, ¶¶ 20-22, 42. The but-for standard generally requires a showing that the harm would not have occurred in the absence of—that is, but for—the discriminatory conduct. *Wilson*, 2024 MSPB 3, ¶ 15. The methods by which an appellant may prove a claim of discrimination or retaliation are: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic;" (b) comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination, (i.e., the burden-shifting standard under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973)); and (3) some combination of direct and indirect evidence. *Pridgen*, 2022 MSPB 31, ¶ 24.

¶36    In cases that involve at least some circumstantial evidence, the Board has set forth two methods by which an appellant may establish but-for causation, i.e., the pretext framework or the mixed-motive framework. *Wilson*, 2024 MSPB 3, ¶¶ 15-19. Under the pretext framework, an appellant may use the *McDonnell Douglas* evidentiary framework to establish that discrimination or retaliation was a but-for cause of the challenged personnel action by showing that the employer's reason is pretextual, or by showing that it is more likely than not that the agency was motivated by discrimination or retaliation. *Id.*, ¶¶ 16-17. Alternatively, under the mixed-motive framework, if an appellant proves motivating factor and the agency does not prove by preponderant evidence that it would have taken the same action in the absence of discrimination, the appellant has established but-for causation. *Id.*, ¶ 18. An appellant may choose to show but-for causation under

20

the pretext framework or under the mixed-motive framework, or by proceeding under both theories simultaneously. *Id.*, ¶ 19.

¶37        Upon review of the record, we find that disability discrimination was a but-for cause of the removal action.    The record is replete with evidence indicating that the agency took its action against the appellant because of her medical condition—or rather, its refusal to properly acknowledge her medical condition and handle her accommodation request.    First, both the notice of proposed removal and the removal decision letters signal that the agency improperly considered the appellant's disability in taking its action against her. For example, the appellant's supervisor states in the notice of proposed removal that he considered Dr. G.'s statement that the appellant "could be working in the D.C. office," but stressed the appellant does not "work in the D.C. Office; [she] work[s] in the Baltimore District Office." IAF, Tab 6 at 61.  He also stated that it was "evident" based on his reading of the appellant's medical documentation that she "had the ability to report to the Baltimore District Office." *Id.*  Additionally, in discussing the appellant's potential for rehabilitation, the appellant's supervisor claimed, "[t]hrough your actions, you have removed yourself from the office in an attempt to get what you want, rather than work through the proper administrative channels." *Id.* at 62.  These comments suggest outright disbelief of Dr. G.'s conclusion that the appellant was medically unable to work out of the Baltimore District Office and that she required reasonable accommodation.

¶38        In the appellant's response to the notice of proposed removal, she reiterated that she was "still medically unable to continue to work in the Baltimore office" but that she could return to work in the Washington, D.C. District Office. *Id.* at 52.  However, in the decision letter, the deciding official stated that he found that the appellant has no potential for rehabilitation because "[y]our written response and actions do not indicate any plan to return to work in the Baltimore District Office.  I can only conclude that you refuse to work in the Baltimore District Office and won't return to work until you get your way, regardless of

what the medical documentation states." *Id.* at 43.  Given Dr. G.'s clear and unambiguous explanation regarding why the appellant's medical conditions prevented her from working at the Baltimore office, these comments about the appellant's "refusal" to return to Baltimore until she "gets her way" certainly indicate disability discrimination.

¶39        This conclusion is also supported by the hearing testimony.  At the hearing, the appellant's supervisor testified that in issuing the notice of proposed removal, he considered that the appellant "didn't have any intention of returning to the Baltimore District Office" and that he believed that her medical documentation did not support her being unable to return to Baltimore.  HCD at 41:00 (testimony of the appellant's supervisor).  He also testified that he determined removal to be the appropriate penalty in this case because the issue with the appellant "kept coming back to that she wanted to work in the D.C. office."  HCD at 54:30 (testimony of the appellant's supervisor).  Similarly, the deciding official testified that he found the nature of the appellant's offense very serious in part because she did not submit "adequate medical information," and that he reconciled sustaining the appellant's removal even though she did not have any past disciplinary history in part because of "the lack of substantive sufficient evidence that she couldn't return to work."  HCD at 2:07, 2:11 (testimony of the deciding official).  The deciding official also testified that he considered the appellant's potential for rehabilitation and, at the time he sustained her removal, did not think that the appellant would return to the Baltimore District Office "voluntarily."  HCD at 2:17:30 (testimony of the deciding official).  Again, we find that this testimony is evidence that the proposing and deciding officials considered the appellant's medical condition in deciding to remove her.  Specifically, this evidence shows that the proposing and deciding officials refused to acknowledge that the appellant's medical evidence stated that she had a disabling medical condition and required a reasonable accommodation in proposing and effectuating her removal.  Put another way, the record shows that the agency would not have

removed the appellant had it properly acknowledged her medical condition and granted her leave requests or otherwise appropriately engaged in the interactive process with her.

¶40    Consequently, we find that the appellant proved her affirmative defenses of disability discrimination based on disparate treatment and a failure to provide a reasonable accommodation.

## ORDER

¶41    We ORDER the agency to cancel the removal. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶42    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶43    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶44    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not

23

fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶45        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201,

24

1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general.** As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination.** This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[9]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail

Maria Manga
615 Sheridan Street, NW
Washington, District of Columbia 20011

Agency Representative

Electronic Service

Claudine Landry
Served on email address registered with MSPB

Agency Representative

U.S. Mail

Ashley Obando
409 Third Street, SW, 7th Floor
Washington , District of Columbia 20416

Agency Representative

U.S. Mail

Richard Peterson
409 Third Street, SW
Seventh Floor
Washington, District of Columbia 20416

Other Appellant Representative

Certified Mail

Michael Hall
5605 61st Place

Riverdale, Maryland 20737

<u>Other Appellant Representative</u>

Certified Mail        Kevin Zieleniewski
                     1629 K Street NW, Suite 3

                     Washington, District of Columbia 20006


_____07/10/2024_____          _John Hayes_____
        (Date)                             John Hayes

28

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐   7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

MARIA MANGA,                                    DOCKET NUMBER
                                                PH-0752-17-0096-I-1
    Appellant and Petitioner

    v.

SMALL BUSINESS                                  DATE: September 6, 2024
ADMINISTRATION,

    Agency.

### PETITION FOR ENFORCEMENT

COMES NOW Appellant Maria Manga ("Petitioner") and files this petition for this board

to enforce the FINAL ORDER in this case which was issued on July 10, 2024. Also filed

herewith are an accompanying motion for attorney fees and a motion for enforcement of the final

order. Petitioner Maria Manga states as follows:

1.      On July 10, 2024, this Merit Systems Protection Board (the "Board") filed its Final Order

in this case (Exhibit A), in which it ordered the Agency to cancel the removal of Petitioner from

her GS-12 position at the Small Business Administration (the "Agency").

2.      In that Order this Board also ordered the Agency "to pay the appellant the correct amount

of back pay, interest on back pay, and other benefits under the Office of Personnel Management's

regulations, no later than 60 calendar days after the date of this decision." The Board also stated

in that same paragraph (number 42 of the Order): "We ORDER the appellant to cooperate in

good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due,

and to provide all necessary information the agency requests to help it carry out the Board's

Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we

ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision."

3.      On August 23, 2024, the attorney for the Petitioner sent the Agency the Petitioner's calculation of back pay and interest (Exhibit B), the amount being $908,761.78.

4.      On August 30, 2024 the Agency responded to Petitioner's August 23rd email, not disputing Petitioner's calculation of back pay and interest (Exhibit B).

5.      Paragraph 43, which is the next paragraph of the Board's Order, states: "We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b)."

6.      On September 5, 2024, having not been notified, the Petitioner asked the agency about its progress (Exhibit B).

7.      The Order provides notice to the Appellant (Petitioner) of Appellant's right to request attorney fees and costs, for which a motion has been filed on September 6, 2024.

8.      The Order also provides notice to the Appellant (Petitioner) of Petitioner's right to recover compensatory damages, stating: "You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life." Appellant (Petitioner) has filed Appellant's Motion for Compensatory Damages on September 6, 2024.

WHEREFORE, Petitioner, the Appellant in this case, respectfully requests payment of back pay and interest of $908,761.78 and rulings on Appellant's Motion for Attorney Fees, and Appellant's Motion for Compensatory Damages.

Respectfully submitted,

/s/ *Kevin Zieleniewski, Esq.*
Kevin Zieleniewski, Esq.
Attorney for Appellant, Petitioner Maria Manga
1629 K Street NW; Suite 300
Washington, DC 20006
Email: kevin.zielen@alspc.com
Telephone: (202) 445-0099

Case 1:25-cv-00214-UNA    Document 7    Filed 07/25/25

**Salary Table 2024-DCB**
**Incorporating the 4.7% General Schedule Increase and a Locality Payment of 33.26%**
**For the Locality Pay Area of Washington-Baltimore-Arlington, DC-MD-VA-WV-PA**
**Total Increase: 5.31%**
**Effective January 2024**

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 29,299 | $ 30,282 | $ 31,255 | $ 32,226 | $ 33,198 | $ 33,767 | $ 34,732 | $ 35,703 | $ 35,742 | $ 36,649 |
| 2 | 32,945 | 33,728 | 34,820 | 35,742 | 36,145 | 37,209 | 38,272 | 39,336 | 40,399 | 41,463 |
| 3 | 35,947 | 37,145 | 38,343 | 39,541 | 40,739 | 41,937 | 43,135 | 44,333 | 45,531 | 46,729 |
| 4 | 40,351 | 41,696 | 43,040 | 44,385 | 45,730 | 47,074 | 48,419 | 49,763 | 51,108 | 52,452 |
| 5 | 45,146 | 46,650 | 48,155 | 49,659 | 51,164 | 52,668 | 54,173 | 55,677 | 57,182 | 58,686 |
| 6 | 50,326 | 52,003 | 53,681 | 55,359 | 57,037 | 58,714 | 60,392 | 62,070 | 63,748 | 65,425 |
| 7 | 55,924 | 57,788 | 59,653 | 61,517 | 63,381 | 65,245 | 67,110 | 68,974 | 70,838 | 72,703 |
| 8 | 61,933 | 63,997 | 66,061 | 68,125 | 70,189 | 72,254 | 74,318 | 76,382 | 78,446 | 80,510 |
| 9 | 68,405 | 70,685 | 72,965 | 75,245 | 77,525 | 79,805 | 82,085 | 84,366 | 86,646 | 88,926 |
| 10 | 75,329 | 77,840 | 80,350 | 82,861 | 85,372 | 87,882 | 90,393 | 92,904 | 95,414 | 97,925 |
| 11 | 82,764 | 85,522 | 88,281 | 91,039 | 93,798 | 96,556 | 99,315 | 102,073 | 104,832 | 107,590 |
| 12 | 99,200 | 102,506 | 105,812 | 109,119 | 112,425 | 115,731 | 119,037 | 122,343 | 125,650 | 128,956 |
| 13 | 117,962 | 121,894 | 125,827 | 129,759 | 133,692 | 137,624 | 141,557 | 145,489 | 149,422 | 153,354 |
| 14 | 139,395 | 144,042 | 148,689 | 153,336 | 157,982 | 162,629 | 167,276 | 171,923 | 176,570 | 181,216 |
| 15 | 163,964 | 169,429 | 174,894 | 180,359 | 185,824 | 191,289 | 191,900 * | 191,900 * | 191,900 * | 191,900 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2024 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2024/locality-pay-area-definitions/

## Salary Table 2023-DCB
### Incorporating the 4.1% General Schedule Increase and a Locality Payment of 32.49%
### For the Locality Pay Area of Washington-Baltimore-Arlington, DC-MD-VA-WV-PA
### Total Increase: 4.86%
### Effective January 2023

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|-------|--------|--------|--------|--------|--------|--------|--------|--------|--------|---------|
| 1 | $ 27,822 | $ 28,756 | $ 29,679 | $ 30,601 | $ 31,525 | $ 32,065 | $ 32,981 | $ 33,903 | $ 33,940 | $ 34,809 |
| 2 | 31,284 | 32,028 | 33,064 | 33,940 | 34,323 | 35,332 | 36,342 | 37,352 | 38,361 | 39,371 |
| 3 | 34,135 | 35,273 | 36,411 | 37,549 | 38,687 | 39,825 | 40,963 | 42,101 | 43,239 | 44,378 |
| 4 | 38,317 | 39,595 | 40,872 | 42,149 | 43,426 | 44,703 | 45,981 | 47,258 | 48,535 | 49,812 |
| 5 | 42,870 | 44,299 | 45,729 | 47,158 | 48,588 | 50,018 | 51,447 | 52,877 | 54,306 | 55,736 |
| 6 | 47,789 | 49,382 | 50,974 | 52,567 | 54,159 | 55,752 | 57,344 | 58,937 | 60,529 | 62,122 |
| 7 | 53,105 | 54,875 | 56,645 | 58,415 | 60,185 | 61,955 | 63,725 | 65,495 | 67,265 | 69,035 |
| 8 | 58,811 | 60,772 | 62,733 | 64,694 | 66,654 | 68,615 | 70,576 | 72,537 | 74,498 | 76,459 |
| 9 | 64,957 | 67,122 | 69,287 | 71,452 | 73,617 | 75,782 | 77,947 | 80,111 | 82,276 | 84,441 |
| 10 | 71,531 | 73,916 | 76,301 | 78,686 | 81,071 | 83,455 | 85,840 | 88,225 | 90,610 | 92,995 |
| 11 | 78,592 | 81,211 | 83,830 | 86,450 | 89,069 | 91,688 | 94,308 | 96,927 | 99,546 | 102,166 |
| 12 | 94,199 | 97,339 | 100,479 | 103,619 | 106,759 | 109,899 | 113,039 | 116,179 | 119,319 | 122,459 |
| 13 | 112,015 | 115,749 | 119,482 | 123,216 | 126,949 | 130,683 | 134,416 | 138,150 | 141,884 | 145,617 |
| 14 | 132,368 | 136,780 | 141,192 | 145,604 | 150,016 | 154,428 | 158,840 | 163,252 | 167,663 | 172,075 |
| 15 | 155,700 | 160,889 | 166,079 | 171,268 | 176,458 | 181,648 | 183,500 * | 183,500 * | 183,500 * | 183,500 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2023 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2023/locality-pay-area-definitions/

# Salary Table 2022-DCB
## Incorporating the 2.2% General Schedule Increase and a Locality Payment of 31.53%
### For the Locality Pay Area of Washington-Baltimore-Arlington, DC-MD-VA-WV-PA
**Total Increase: 3.02%**
**Effective January 2022**

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 26,532 | $ 27,423 | $ 28,304 | $ 29,183 | $ 30,064 | $ 30,579 | $ 31,453 | $ 32,331 | $ 32,367 | $ 33,190 |
| 2 | 29,834 | 30,544 | 31,532 | 32,367 | 32,733 | 33,695 | 34,658 | 35,621 | 36,584 | 37,547 |
| 3 | 32,552 | 33,637 | 34,723 | 35,808 | 36,893 | 37,978 | 39,063 | 40,148 | 41,233 | 42,318 |
| 4 | 36,542 | 37,760 | 38,978 | 40,196 | 41,414 | 42,632 | 43,849 | 45,067 | 46,285 | 47,503 |
| 5 | 40,883 | 42,246 | 43,609 | 44,971 | 46,334 | 47,697 | 49,059 | 50,422 | 51,785 | 53,147 |
| 6 | 45,574 | 47,093 | 48,612 | 50,131 | 51,651 | 53,170 | 54,689 | 56,208 | 57,727 | 59,246 |
| 7 | 50,643 | 52,331 | 54,018 | 55,706 | 57,393 | 59,081 | 60,768 | 62,456 | 64,143 | 65,831 |
| 8 | 56,086 | 57,955 | 59,824 | 61,693 | 63,562 | 65,431 | 67,300 | 69,169 | 71,038 | 72,907 |
| 9 | 61,947 | 64,012 | 66,077 | 68,142 | 70,207 | 72,272 | 74,337 | 76,402 | 78,467 | 80,532 |
| 10 | 68,217 | 70,491 | 72,765 | 75,039 | 77,313 | 79,587 | 81,862 | 84,136 | 86,410 | 88,684 |
| 11 | 74,950 | 77,447 | 79,945 | 82,443 | 84,941 | 87,439 | 89,936 | 92,434 | 94,932 | 97,430 |
| 12 | 89,834 | 92,829 | 95,824 | 98,818 | 101,813 | 104,808 | 107,803 | 110,798 | 113,793 | 116,788 |
| 13 | 106,823 | 110,384 | 113,944 | 117,505 | 121,065 | 124,626 | 128,187 | 131,747 | 135,308 | 138,868 |
| 14 | 126,233 | 130,441 | 134,649 | 138,856 | 143,064 | 147,272 | 151,479 | 155,687 | 159,894 | 164,102 |
| 15 | 148,484 | 153,434 | 158,383 | 163,333 | 168,282 | 173,232 | 176,300 * | 176,300 * | 176,300 * | 176,300 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2022 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2022/locality-pay-area-definitions/

Case 1:25-cv-00214-UNA   Document 7   Filed 07/25/25   Page 49 of 79

**SALARY TABLE 2021-DCB**
**INCORPORATING THE 1% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 30.48%**
**FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA**
**TOTAL INCREASE: 1%**
**EFFECTIVE JANUARY 2021**

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 25,754 | $ 26,618 | $ 27,474 | $ 28,326 | $ 29,182 | $ 29,683 | $ 30,530 | $ 31,383 | $ 31,417 | $ 32,216 |
| 2 | 28,959 | 29,648 | 30,607 | 31,417 | 31,771 | 32,705 | 33,639 | 34,573 | 35,508 | 36,442 |
| 3 | 31,597 | 32,650 | 33,703 | 34,756 | 35,809 | 36,862 | 37,915 | 38,968 | 40,021 | 41,074 |
| 4 | 35,470 | 36,652 | 37,834 | 39,016 | 40,198 | 41,380 | 42,563 | 43,745 | 44,927 | 46,109 |
| 5 | 39,684 | 41,007 | 42,330 | 43,653 | 44,976 | 46,300 | 47,623 | 48,946 | 50,269 | 51,592 |
| 6 | 44,237 | 45,711 | 47,185 | 48,660 | 50,134 | 51,609 | 53,083 | 54,558 | 56,032 | 57,506 |
| 7 | 49,157 | 50,796 | 52,435 | 54,074 | 55,712 | 57,351 | 58,990 | 60,629 | 62,268 | 63,906 |
| 8 | 54,440 | 56,255 | 58,070 | 59,885 | 61,700 | 63,515 | 65,330 | 67,145 | 68,960 | 70,775 |
| 9 | 60,129 | 62,133 | 64,137 | 66,142 | 68,146 | 70,150 | 72,154 | 74,158 | 76,162 | 78,167 |
| 10 | 66,216 | 68,424 | 70,631 | 72,839 | 75,047 | 77,255 | 79,462 | 81,670 | 83,878 | 86,085 |
| 11 | 72,750 | 75,176 | 77,602 | 80,027 | 82,453 | 84,879 | 87,304 | 89,730 | 92,155 | 94,581 |
| 12 | 87,198 | 90,106 | 93,013 | 95,920 | 98,827 | 101,734 | 104,641 | 107,548 | 110,455 | 113,362 |
| 13 | 103,690 | 107,146 | 110,603 | 114,059 | 117,516 | 120,972 | 124,428 | 127,885 | 131,341 | 134,798 |
| 14 | 122,530 | 126,614 | 130,698 | 134,782 | 138,866 | 142,950 | 147,034 | 151,118 | 155,202 | 159,286 |
| 15 | 144,128 | 148,932 | 153,737 | 158,541 | 163,345 | 168,150 | 172,500 * | 172,500 * | 172,500 * | 172,500 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2021 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2021/locality-pay-area-definitions/

**SALARY TABLE 2020-DCB**
**INCORPORATING THE 2.6% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 30.48%**
**FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA**
**TOTAL INCREASE: 3.52%**
**EFFECTIVE JANUARY 2020**

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 25,500 | $ 26,354 | $ 27,202 | $ 28,045 | $ 28,893 | $ 29,389 | $ 30,227 | $ 31,073 | $ 31,106 | $ 31,900 |
| 2 | 28,672 | 29,354 | 30,304 | 31,106 | 31,456 | 32,381 | 33,306 | 34,231 | 35,157 | 36,082 |
| 3 | 31,284 | 32,326 | 33,369 | 34,411 | 35,454 | 36,497 | 37,539 | 38,582 | 39,624 | 40,667 |
| 4 | 35,119 | 36,289 | 37,460 | 38,630 | 39,800 | 40,971 | 42,141 | 43,312 | 44,482 | 45,652 |
| 5 | 39,291 | 40,601 | 41,911 | 43,222 | 44,532 | 45,842 | 47,152 | 48,462 | 49,772 | 51,082 |
| 6 | 43,798 | 45,258 | 46,718 | 48,178 | 49,639 | 51,099 | 52,559 | 54,019 | 55,479 | 56,939 |
| 7 | 48,670 | 50,292 | 51,914 | 53,536 | 55,158 | 56,780 | 58,402 | 60,023 | 61,645 | 63,267 |
| 8 | 53,901 | 55,698 | 57,495 | 59,291 | 61,088 | 62,885 | 64,682 | 66,478 | 68,275 | 70,072 |
| 9 | 59,534 | 61,519 | 63,503 | 65,488 | 67,473 | 69,457 | 71,442 | 73,426 | 75,411 | 77,396 |
| 10 | 65,561 | 67,747 | 69,932 | 72,118 | 74,303 | 76,489 | 78,674 | 80,860 | 83,045 | 85,231 |
| 11 | 72,030 | 74,431 | 76,832 | 79,233 | 81,634 | 84,034 | 86,435 | 88,836 | 91,237 | 93,638 |
| 12 | 86,335 | 89,213 | 92,091 | 94,970 | 97,848 | 100,727 | 103,605 | 106,483 | 109,362 | 112,240 |
| 13 | 102,663 | 106,085 | 109,508 | 112,930 | 116,353 | 119,775 | 123,198 | 126,620 | 130,043 | 133,465 |
| 14 | 121,316 | 125,360 | 129,404 | 133,447 | 137,491 | 141,534 | 145,578 | 149,621 | 153,665 | 157,709 |
| 15 | 142,701 | 147,458 | 152,215 | 156,973 | 161,730 | 166,487 | 170,800 * | 170,800 * | 170,800 * | 170,800 * |

\* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2020 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2020/locality-pay-area-definitions/

Case 1:25-cv-00214-UNA    Document 7    Filed 07/25/25

# SALARY TABLE 2019-DCB
## INCORPORATING THE 1.4% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 29.32%
### FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA
#### TOTAL INCREASE: 2.27%
#### EFFECTIVE JANUARY 2019

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 24,633 | $ 25,458 | $ 26,278 | $ 27,091 | $ 27,911 | $ 28,390 | $ 29,199 | $ 30,016 | $ 30,049 | $ 30,813 |
| 2 | 27,696 | 28,356 | 29,273 | 30,049 | 30,386 | 31,280 | 32,174 | 33,067 | 33,961 | 34,854 |
| 3 | 30,219 | 31,227 | 32,234 | 33,242 | 34,249 | 35,257 | 36,264 | 37,271 | 38,279 | 39,286 |
| 4 | 33,925 | 35,055 | 36,185 | 37,315 | 38,446 | 39,576 | 40,706 | 41,836 | 42,967 | 44,097 |
| 5 | 37,955 | 39,220 | 40,485 | 41,750 | 43,014 | 44,279 | 45,544 | 46,809 | 48,073 | 49,338 |
| 6 | 42,308 | 43,719 | 45,130 | 46,541 | 47,952 | 49,363 | 50,774 | 52,184 | 53,595 | 55,006 |
| 7 | 47,016 | 48,583 | 50,150 | 51,718 | 53,285 | 54,852 | 56,420 | 57,987 | 59,554 | 61,122 |
| 8 | 52,068 | 53,804 | 55,539 | 57,275 | 59,010 | 60,745 | 62,481 | 64,216 | 65,952 | 67,687 |
| 9 | 57,510 | 59,426 | 61,343 | 63,259 | 65,176 | 67,093 | 69,009 | 70,926 | 72,842 | 74,759 |
| 10 | 63,332 | 65,442 | 67,553 | 69,663 | 71,774 | 73,884 | 75,995 | 78,105 | 80,216 | 82,326 |
| 11 | 69,581 | 71,901 | 74,221 | 76,541 | 78,861 | 81,181 | 83,501 | 85,821 | 88,141 | 90,461 |
| 12 | 83,398 | 86,179 | 88,959 | 91,740 | 94,520 | 97,300 | 100,081 | 102,861 | 105,642 | 108,422 |
| 13 | 99,172 | 102,477 | 105,782 | 109,088 | 112,393 | 115,699 | 119,004 | 122,310 | 125,615 | 128,920 |
| 14 | 117,191 | 121,098 | 125,005 | 128,911 | 132,818 | 136,725 | 140,632 | 144,538 | 148,445 | 152,352 |
| 15 | 137,849 | 142,443 | 147,038 | 151,633 | 156,228 | 160,822 | 165,417 | 166,500 * | 166,500 * | 166,500 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2019 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2019/locality-pay-area-definitions/

# SALARY TABLE 2018-DCB
## INCORPORATING THE 1.4% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 28.22%
## FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA
### TOTAL INCREASE: 2.29%
### EFFECTIVE JANUARY 2018

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 24,086 | $ 24,893 | $ 25,694 | $ 26,490 | $ 27,292 | $ 27,760 | $ 28,551 | $ 29,351 | $ 29,382 | $ 30,134 |
| 2 | 27,081 | 27,726 | 28,623 | 29,382 | 29,715 | 30,589 | 31,464 | 32,338 | 33,213 | 34,087 |
| 3 | 29,548 | 30,533 | 31,518 | 32,502 | 33,487 | 34,472 | 35,457 | 36,441 | 37,426 | 38,411 |
| 4 | 33,172 | 34,277 | 35,382 | 36,488 | 37,593 | 38,698 | 39,803 | 40,909 | 42,014 | 43,119 |
| 5 | 37,113 | 38,351 | 39,588 | 40,825 | 42,063 | 43,300 | 44,537 | 45,775 | 47,012 | 48,249 |
| 6 | 41,369 | 42,747 | 44,126 | 45,504 | 46,882 | 48,261 | 49,639 | 51,017 | 52,396 | 53,774 |
| 7 | 45,972 | 47,504 | 49,036 | 50,569 | 52,101 | 53,633 | 55,165 | 56,698 | 58,230 | 59,762 |
| 8 | 50,912 | 52,610 | 54,308 | 56,005 | 57,703 | 59,400 | 61,098 | 62,796 | 64,493 | 66,191 |
| 9 | 56,233 | 58,108 | 59,983 | 61,857 | 63,732 | 65,606 | 67,481 | 69,355 | 71,230 | 73,105 |
| 10 | 61,926 | 63,991 | 66,055 | 68,119 | 70,184 | 72,248 | 74,312 | 76,377 | 78,441 | 80,505 |
| 11 | 68,036 | 70,304 | 72,573 | 74,841 | 77,109 | 79,377 | 81,645 | 83,914 | 86,182 | 88,450 |
| 12 | 81,548 | 84,266 | 86,984 | 89,703 | 92,421 | 95,139 | 97,858 | 100,576 | 103,294 | 106,012 |
| 13 | 96,970 | 100,203 | 103,435 | 106,668 | 109,900 | 113,132 | 116,365 | 119,597 | 122,830 | 126,062 |
| 14 | 114,590 | 118,410 | 122,230 | 126,049 | 129,869 | 133,689 | 137,508 | 141,328 | 145,148 | 148,967 |
| 15 | 134,789 | 139,282 | 143,774 | 148,267 | 152,760 | 157,253 | 161,746 | 164,200 * | 164,200 * | 164,200 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2018 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2018/locality-pay-area-definitions/

# SALARY TABLE 2017-DCB
## INCORPORATING THE 1% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 27.10%
## FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA
## TOTAL INCREASE: 2.88%
## EFFECTIVE JANUARY 2017

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 23,547 | $ 24,335 | $ 25,118 | $ 25,897 | $ 26,680 | $ 27,137 | $ 27,911 | $ 28,693 | $ 28,723 | $ 29,450 |
| 2 | 26,474 | 27,104 | 27,981 | 28,723 | 29,046 | 29,900 | 30,754 | 31,608 | 32,463 | 33,317 |
| 3 | 28,886 | 29,849 | 30,813 | 31,776 | 32,740 | 33,703 | 34,667 | 35,630 | 36,593 | 37,557 |
| 4 | 32,428 | 33,509 | 34,589 | 35,669 | 36,750 | 37,830 | 38,910 | 39,991 | 41,071 | 42,151 |
| 5 | 36,281 | 37,491 | 38,701 | 39,911 | 41,121 | 42,331 | 43,541 | 44,751 | 45,961 | 47,171 |
| 6 | 40,442 | 41,790 | 43,139 | 44,488 | 45,836 | 47,185 | 48,533 | 49,882 | 51,230 | 52,579 |
| 7 | 44,941 | 46,440 | 47,938 | 49,437 | 50,935 | 52,434 | 53,932 | 55,431 | 56,929 | 58,428 |
| 8 | 49,771 | 51,430 | 53,088 | 54,747 | 56,406 | 58,064 | 59,723 | 61,382 | 63,040 | 64,699 |
| 9 | 54,972 | 56,805 | 58,638 | 60,470 | 62,303 | 64,136 | 65,969 | 67,801 | 69,634 | 71,467 |
| 10 | 60,538 | 62,556 | 64,574 | 66,593 | 68,611 | 70,629 | 72,648 | 74,666 | 76,685 | 78,703 |
| 11 | 66,510 | 68,727 | 70,943 | 73,160 | 75,377 | 77,593 | 79,810 | 82,027 | 84,243 | 86,460 |
| 12 | 79,720 | 82,377 | 85,035 | 87,693 | 90,350 | 93,008 | 95,666 | 98,323 | 100,981 | 103,639 |
| 13 | 94,796 | 97,956 | 101,116 | 104,275 | 107,435 | 110,595 | 113,755 | 116,914 | 120,074 | 123,234 |
| 14 | 112,021 | 115,755 | 119,489 | 123,223 | 126,958 | 130,692 | 134,426 | 138,160 | 141,894 | 145,629 |
| 15 | 131,767 | 136,160 | 140,552 | 144,945 | 149,337 | 153,730 | 158,123 | 161,900 * | 161,900 * | 161,900 * |

\* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2017 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2017/locality-pay-area-definitions/

# SALARY TABLE 2016-DCB
## INCORPORATING THE 1% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 24.78%
## FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA
### TOTAL INCREASE: 1.46%
### EFFECTIVE JANUARY 2016

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|-------|--------|--------|--------|--------|--------|--------|--------|--------|--------|---------|
| 1 | $ 22,888 | $ 23,653 | $ 24,414 | $ 25,172 | $ 25,933 | $ 26,378 | $ 27,131 | $ 27,890 | $ 27,920 | $ 28,626 |
| 2 | 25,733 | 26,346 | 27,198 | 27,920 | 28,236 | 29,068 | 29,899 | 30,730 | 31,561 | 32,392 |
| 3 | 28,078 | 29,014 | 29,950 | 30,886 | 31,821 | 32,757 | 33,693 | 34,629 | 35,565 | 36,501 |
| 4 | 31,521 | 32,571 | 33,622 | 34,673 | 35,723 | 36,774 | 37,825 | 38,875 | 39,926 | 40,977 |
| 5 | 35,265 | 36,441 | 37,616 | 38,792 | 39,967 | 41,142 | 42,318 | 43,493 | 44,669 | 45,844 |
| 6 | 39,311 | 40,621 | 41,931 | 43,241 | 44,551 | 45,862 | 47,172 | 48,482 | 49,792 | 51,102 |
| 7 | 43,684 | 45,140 | 46,597 | 48,053 | 49,509 | 50,965 | 52,421 | 53,878 | 55,334 | 56,790 |
| 8 | 48,378 | 49,991 | 51,603 | 53,215 | 54,827 | 56,439 | 58,051 | 59,664 | 61,276 | 62,888 |
| 9 | 53,435 | 55,215 | 56,996 | 58,776 | 60,557 | 62,338 | 64,118 | 65,899 | 67,679 | 69,460 |
| 10 | 58,844 | 60,805 | 62,767 | 64,728 | 66,690 | 68,651 | 70,613 | 72,575 | 74,536 | 76,498 |
| 11 | 64,650 | 66,805 | 68,960 | 71,115 | 73,270 | 75,425 | 77,579 | 79,734 | 81,889 | 84,044 |
| 12 | 77,490 | 80,073 | 82,656 | 85,238 | 87,821 | 90,404 | 92,987 | 95,570 | 98,153 | 100,736 |
| 13 | 92,145 | 95,217 | 98,289 | 101,361 | 104,433 | 107,505 | 110,578 | 113,650 | 116,722 | 119,794 |
| 14 | 108,887 | 112,517 | 116,146 | 119,776 | 123,406 | 127,036 | 130,666 | 134,296 | 137,926 | 141,555 |
| 15 | 128,082 | 132,352 | 136,622 | 140,892 | 145,162 | 149,432 | 153,702 | 157,971 | 160,300 * | 160,300 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2016 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2016/locality-pay-area-definitions/

# SALARY TABLE 2015-DCB
## INCORPORATING THE 1% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 24.22%
## FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-NORTHERN VIRGINIA, DC-MD-VA-WV-PA
### TOTAL INCREASE: 1%
### EFFECTIVE JANUARY 2015

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 22,560 | $ 23,314 | $ 24,064 | $ 24,810 | $ 25,561 | $ 26,000 | $ 26,742 | $ 27,490 | $ 27,518 | $ 28,213 |
| 2 | 25,364 | 25,968 | 26,808 | 27,518 | 27,829 | 28,648 | 29,466 | 30,285 | 31,103 | 31,922 |
| 3 | 27,675 | 28,598 | 29,521 | 30,444 | 31,367 | 32,290 | 33,213 | 34,136 | 35,059 | 35,982 |
| 4 | 31,069 | 32,105 | 33,141 | 34,177 | 35,213 | 36,249 | 37,285 | 38,321 | 39,357 | 40,393 |
| 5 | 34,759 | 35,918 | 37,077 | 38,236 | 39,395 | 40,554 | 41,713 | 42,872 | 44,031 | 45,190 |
| 6 | 38,747 | 40,039 | 41,330 | 42,622 | 43,914 | 45,206 | 46,498 | 47,790 | 49,082 | 50,374 |
| 7 | 43,057 | 44,492 | 45,927 | 47,361 | 48,796 | 50,231 | 51,666 | 53,100 | 54,535 | 55,970 |
| 8 | 47,684 | 49,274 | 50,864 | 52,454 | 54,044 | 55,634 | 57,224 | 58,814 | 60,404 | 61,994 |
| 9 | 52,668 | 54,423 | 56,178 | 57,934 | 59,689 | 61,444 | 63,199 | 64,955 | 66,710 | 68,465 |
| 10 | 58,000 | 59,932 | 61,865 | 63,798 | 65,731 | 67,664 | 69,597 | 71,530 | 73,462 | 75,395 |
| 11 | 63,722 | 65,847 | 67,971 | 70,095 | 72,219 | 74,343 | 76,467 | 78,592 | 80,716 | 82,840 |
| 12 | 76,378 | 78,924 | 81,471 | 84,017 | 86,564 | 89,110 | 91,657 | 94,203 | 96,750 | 99,296 |
| 13 | 90,823 | 93,851 | 96,878 | 99,905 | 102,932 | 105,960 | 108,987 | 112,014 | 115,041 | 118,069 |
| 14 | 107,325 | 110,902 | 114,480 | 118,057 | 121,635 | 125,213 | 128,790 | 132,368 | 135,945 | 139,523 |
| 15 | 126,245 | 130,453 | 134,662 | 138,871 | 143,079 | 147,288 | 151,496 | 155,705 | 158,700 * | 158,700 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2015 Locality Pay Area Definitions page:

https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2015/locality-pay-area-definitions/

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
NORTHEASTERN REGIONAL OFFICE

MARIA MANGA,
           Appellant,

      v.

SMALL                  
ADMINISTRATION,
           Agency.

DOCKET NUMBER
PH-0752-17-0096-P-1

BUSINESS  DATE:  September 13, 2024

---

THIS DOCUMENT CONTAINS IMPORTANT INFORMATION ABOUT
THIS APPEAL AND ITS PROCESSING.  PLEASE READ THE ENTIRE
DOCUMENT CAREFULLY.

---

## ORDER ON TIMELINESS

**There is a question whether Motion for Compensatory Damages was filed within the time period required by the Board's regulations.  As a result, the Board might dismiss the motion as untimely filed without addressing the merits of the case.  This Order provides necessary information concerning the timeliness issue and steps the appellant must take to show that the Board should not dismiss the motion as untimely.**

The parties are **ORDERED** to follow the procedures set out below.  If either party has a question regarding any of the case processing instructions in this order, you may call this office at the phone number listed under my signature at the end of the order for assistance.

### NOTICE AND ORDER TO THE APPELLANT

According to the Board's Final Order, you were required to file your motion no later than 60 calendar days of the issuance date.

2

Under 5 C.F.R. § 1201.4(*l*), the filing or refiling date for each of the ways in which an appeal can be filed or refiled is:

Mail – the postmark date, but if there is no legible postmark date, mailing is presumed to have been five business days before its receipt;

Personal Delivery – the date we receive the appeal;

Fax – the date of the fax;

Commercial delivery – the date the document was delivered to the commercial delivery service;

E-filing – the date of filing by e-filing is the date of electronic submission.

**It appears that the filing period in this case began on July 10, 2024, and therefore, to be timely, it had to be filed no later than September 9, 2024 (September 8 was a nonbusiness day). The record reflects your motion was filed by commercial delivery on September 12, 2024. Thus, your motion appears that your motion was filed 3 days late.** Because your motion appears to have been filed after the time limit under these rules, it may be untimely.

Before the Board will consider any other issue raised by your motion, you must show by preponderant evidence that the motion was filed on time or that good cause exists for the delay in filing. Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would need to find that a contested fact is more likely true than untrue. 5 C.F.R. § 1201.4(q). In other words, you must show that it is more likely than not that your motion was filed on time or that good cause exists for the delay.

Accordingly, if you claim that you filed your motion on time under any of the filing rules listed above, I **ORDER** you to file evidence and/or argument showing that you did so. You must provide all the details explaining your actions concerning the filing. If the apparent untimeliness of your motion is due to your late receipt of the decision you are appealing, you must also submit evidence and

argument as to the date you received it. If you have postal receipts or other proof of mailing, you should send a legible copy of them with your response.

If you did not file your motion on time, I **ORDER** you to file evidence and/or argument showing that good cause exists for the delay in filing. To show that there was good cause for a delay in filing, you must show that you acted reasonably and with due diligence under the particular circumstances of your case. The factors the Board will look at to determine whether you acted reasonably include, but are not limited to:

the length of the delay;

whether you were notified of the time limit or were otherwise aware of it;

the existence of circumstances beyond your control which affected your ability to comply with the time limit, and the possibility of negligence on your part;

circumstances which show that any neglect on your part was excusable;

whether there was unavoidable casualty or misfortune that affected your ability to timely file your motion; and

whether not applying the time limit to you would harm the agency.

In your response to this order addressing the timeliness issue, be as specific as possible by giving all the details. You should also include any evidence that supports the reason for your delay.

If an illness prevented you from filing your motion within the time limit, you must identify the period during which you suffered from the illness, submit medical evidence and any other supporting evidence showing that you suffered from the illness during the relevant time period, and explain how the illness prevented you from filing your motion on time or requesting an extension of time

4

to file. If medical evidence is not available, you must submit other supporting evidence and explain why medical evidence is not available.

Any explanation of the reason for a late motion must also address why you could not have filed a timely request for an extension of the filing time limit.

Your response to this order need not be in the form of an affidavit, sworn statement, or declaration under penalty of perjury, 28 U.S.C. § 1746 (a form for which is found in the Board's regulations at 5 C.F.R. part 1201, Appendix IV). However, although the Board has held that an unsworn statement by an appellant is considered admissible evidence, the fact that it is unsworn may detract from its probative value. *Scott v. Department of Justice*, 69 M.S.P.R. 211, 228 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table). Although there are limited circumstances in which a hearing may be held on the question of the timeliness of a motion, you should submit all evidence and argument you wish me to consider on that issue, and not withhold anything in expectation that a hearing may be held.

**Your submission must be filed by September 25, 2024**, and you must serve a copy of it on the agency at the same time.

## ORDER TO THE AGENCY

The agency is **ORDERED** to file any evidence that it has on the timeliness issue by **October 4, 2024**, and may submit argument as well.

\* \* \* \*

Unless I tell the parties otherwise, the record on the timeliness issue will close on the date the agency's response is due. That means I will not accept any more evidence or argument on that issue that is filed after that date unless the party submitting it shows it was not readily available prior to the close of the record.

5

Notwithstanding the close of the record, however, pursuant to 5 C.F.R. § 1201.59(c), a party must be allowed to respond to new evidence or argument submitted by the other party just before the close of the record.

FOR THE BOARD:

*Daniel F McLaughlin*

Daniel F. McLaughlin
Administrative Judge

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

U.S. Mail

Maria Manga
615 Sheridan Street, NW
Washington, District of Columbia 20011

### Agency Representative

Electronic Service

Claudine Landry
Served on email address registered with MSPB

### Other Appellant Representative

U.S. Mail

Kevin Zieleniewski
1629 K Street NW, Suite 3
Washington, District of Columbia 20006

| | |
|---|---|
| 09/13/2024 | *Harriett E. Hines* |
| (Date) | Harriett E. Hines |
| | Paralegal Specialist |

Docket Number: PH-0752-17-0096-P-1
Party Type: Appellant


Maria Manga
615 Sheridan Street, NW
Washington, DC 20011

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
NORTHEASTERN REGIONAL OFFICE

MARIA MANGA,

Appellant,

v.

SMALL BUSINESS
ADMINISTRATION,

Agency.

DOCKET NUMBER
PH-0752-17-0096-P-1

DATE:  September 13, 2024

---

**THIS DOCUMENT CONTAINS IMPORTANT INFORMATION ABOUT THIS APPEAL AND ITS PROCESSING.  PLEASE READ THE ENTIRE DOCUMENT CAREFULLY.**

---

## ACKNOWLEDGMENT ORDER

This office has received appellant's motion for compensatory damages.  I am the administrative judge assigned to rule on appellant's motion.  The parties are reminded that the procedures and filing requirements set forth in the Order acknowledging appellant's original appeal may have changed as a result of the substantial revision of the Merit Systems Protection Board's regulations effective November 13, 2012.  The revised regulations are available on the Board's website, www.mspb.gov.  If either party has a question regarding any aspect of either those case processing instructions or the instructions set forth herein, he or she may seek clarification from me at the phone number listed under my name at the end of this Order.

2

## MANDATORY ELECTRONIC FILING FOR AGENCIES AND ATTORNEYS

The Board requires all pleadings filed by agencies and attorneys who represent appellants in Board proceedings to be electronically filed (e-filed) using the Board's e-Appeal system at https://e-appeal.mspb.gov/. This requirement applies to all pleadings in all adjudicatory proceedings before the Board unless specifically excluded by 5 C.F.R. § 1201.14(d). **Agencies and attorneys representing appellants in Board proceedings must register with e-Appeal as e-filers.** For additional instructions on e-filing, read the section below of this Acknowledgment Order titled "Pleadings Submitted via e-Appeal," and the Board's regulations at 5 C.F.R. § 1201.14.

## NOTICE TO THE APPELLANT

### INTRODUCTION

The Board may order payment of compensatory damages, as authorized by section 102 of the Civil Rights Act of 1991 (42 U.S.C. 1981a), in a Board proceeding in which the decision is based on a finding of unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) or failure to provide reasonable accommodation, where such discrimination is prohibited by the Civil Rights Act of 1964, the Rehabilitation Act of 1973, or the Americans with Disabilities Act of 1990 as amended by the Americans With Disabilities Amendments Act of 2008. *See, e.g., Totten v. U.S. Postal Service,* 68 M.S.P.R. 255, 257 n.2 (1995) (citing *Hocker v. Department of Transportation,* 63 M.S.P.R. 497 (1994), *aff'd,* 64 F.3d 676 (Fed. Cir. 1995) (Table)).

Compensatory damages may be awarded for all pecuniary losses and some nonpecuniary losses. All compensable losses must be directly or proximately caused by the discriminatory agency action at issue.

Compensatory damage awards for pecuniary losses are to reimburse a victim for actual monetary harm and are limited to the losses proven to have been caused by the discriminatory action. An appellant has a duty to mitigate pecuniary losses, and failure to exercise reasonable diligence in this respect can result in a reduction of compensatory damages.

Nonpecuniary losses are not subject to precise quantification and include, but are not necessarily limited to, emotional pain, suffering, inconvenience, mental anguish, injury to character and reputation, and loss of enjoyment of life. There are no formulas for determining the amount of nonpecuniary losses, but such awards should reflect the extent to which the discriminatory act caused the harm in relation to the extent other factors might also have caused the harm. An award should also take into consideration the nature, severity, and duration of the harm.

Appellant must submit proof of both pecuniary and nonpecuniary damages. Pecuniary damages are quantifiable and usually can be objectively documented. Nonpecuniary damages may be established by documentary evidence, but also by statements from appellant and others including family members, friends, health care providers, counselors, or clergy.

If you wish to supplement or amend your motion, you must file your submission within 15 days of the date of this Order.

## CLOSE OF RECORD

The agency may file a response to your motion, and any supplement or amendment, within 30 days of the date of this Order. The record will close 40 days from the date of this Order. You may file a response to the agency's submission no later than the close of record. No evidence or argument filed after the close of record will be accepted unless you show that it is new and material evidence that was unavailable before the record closed. **Note that if, prior to the close of the record, you fail to object to any of my written or verbal rulings**

4

on a matter raised by you or the agency, you will be precluded from challenging that ruling on petition for review or cross-petition for review.

## NOTICE TO AGENCY

### AGENCY RESPONSE

I **DIRECT** the agency to read, comply with, and/or respond to any and all portions of the "Notice to Appellant" which are applicable to it.

## NOTICE TO THE PARTIES

### SETTLEMENT

The Board strongly encourages the settlement of the appeals that come before it. Even where discussions between the parties do not result in settlement, they often help to define the issues and assist the parties in agreeing to stipulations. I therefore urge the parties to contact each other to discuss the possibility of settlement as early in this proceeding as possible. I am available to assist in the discussions. The parties should discuss concrete, specific settlement proposals unless either party concludes in good faith that no compromise of any kind is possible. They must also be prepared to discuss with me the status of any settlement discussions. *See* 5 C.F.R. § 1201.41(b)(12) (the administrative judge is authorized to "[h]old prehearing conferences for the settlement and simplification of issues").

If the parties agree to settle this appeal, and to enter the agreement into the record, the Board will retain the authority to enforce its terms. However, if they

5

do not enter the agreement into the record, the Board will have no authority to enforce the agreement.


FOR THE BOARD:

*Daniel F McLaughlin*

Daniel F. McLaughlin
Administrative Judge
Northeastern Regional Office
1601 Market Street Suite 1700
Philadelphia, PA 19103
Phone:  (215) 597-9960
Fax:     (215) 731-3962
V/TDD

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

U.S. Mail

Maria Manga
615 Sheridan Street, NW
Washington, District of Columbia 20011

### Agency Representative

Electronic Service

Claudine Landry
Served on email address registered with MSPB

### Other Appellant Representative

U.S. Mail

Kevin Zieleniewski
1629 K Street NW, Suite 3
Washington, District of Columbia 20006

| 09/13/2024 | *Harriett E. Hines* |
|---|---|
| (Date) | Harriett E. Hines |
| | Paralegal Specialist |

Docket Number: PH-0752-17-0096-P-1
Party Type: Appellant


Maria Manga
615 Sheridan Street, NW
Washington, DC 20011



**U.S. Equal Employment Opportunity Commission**
Office of Federal Operations
P. O. Box 77960
Washington, D.C.  20013

November 08, 2024

Merit Systems Protection Board
The Clerk Of The Board
1615  M  St, NW  #500
Washington, DC 20418-0002

To Whom It May Concern:

This is to inform you that on October    22, 2024, Maria Manga (Petitioner) filed a petition asking the EEOC's Office of Federal Operations (OFO) to review the Merit Systems Protection Board's (MSPB or Board) decision in MSPB No. PH-0752-17-009-I-1.  OFO docketed the petition for review on November 08, 2024, under EEOC Petition No. 2025000324. Please refer to that Petition No. on all correspondence to this office.

OFO requests that the MSPB submit a copy of all records relevant to this case within twenty (20) days of receipt of this correspondence. While we prefer the submission of this documentation in digital format, we will accept submission of the records in hardcopy.

The Board is responsible for informing OFO of the filing, and filing date of any civil action or action for review before the Federal Circuit Court concerning this matter.  We ask that you advise OFO of the name of the court, the civil action number, and the present status of the litigation.  If a court renders a decision, we ask that the Board also provide OFO with a copy of the court's opinion.

We will send our decision to the parties by first class mail.  Please note that, to preserve Petitioner's anonymity, our decision will have a random pseudonym (fictitious name) listed in the caption under Petitioner's real name. The published decision will use only the pseudonym unless Petitioner authorizes use of his/her real name.

Thank you in advance for your assistance.

Sincerely,

Compliance and Control Division
Office of Federal Operations

 **Gmail**

Maria Manga <ritastar2018@gmail.com>

## EEOC Acknowledgement Letter to COMPLAINANT-Type: 03 Case: 2025000324

1 message

**EEOC** <no-reply@service.eeoc.gov>                                              Fri, Nov 8, 2024 at 8:11 AM
To: ritastar2018@gmail.com

**U.S. Equal Employment Opportunity Commission**
**Office of Federal Operations**

**November 08, 2024**

Maria Manga
615 Sheridan Street NW
WASHINGTON, DC 20011
USA

Dear Maria Manga:

Thank you for filing an appeal with the EEOC Office of Federal Operations (OFO). We have received your October 22, 2024 appeal against the Small Business Administration. The routing number associated with your appeal is: 2025000324. Please reference this routing number whenever you submit documents or correspond with OFO in the future.

**Next Steps**

1.   You may submit a statement in support of your appeal, if you have not already done so (this step is optional). If you need guidance on preparing a brief, including time requirements and suggestions for organizing, formatting, and writing the brief, we urge you to read OFO's Guide to Appeal Brief Writing for Unrepresented Complainants before the EEOC Office of Federal Operations, found at https://publicportal.eeoc.gov/Portal/Faq.aspx.

     Generally, you may submit a supporting statement by November 21, 2024. But there is an exception: if you asked us to review a decision by the U.S. Merit Systems Protection Board (MSPB), you needed to submit your supporting statement at the same time you requested us to review the MSPB's decision.

     The most popular ways to send a statement in support of an appeal (except a petition to review a MSPB decision) are:

     •   EEOC Public Portal. You can log in to the EEOC Public Portal, select the appeal with the appropriate routing number, and electronically submit your statement. The EEOC Public Portal will then automatically serve your supporting statement to the agency.

     •   Mail. You can mail your statement to: Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013. We will use the postmarked date as the filing date for your statement. If you mail us your supporting statement, you must also mail and serve the Agency with a copy of your statement.

     If you need more time to send us your statement, you can ask for more time by logging in to the EEOC Public Portal and electronically submit a request for an extension. Your extension request must be electronically submitted before November 21, 2024. In your request, you should describe why you need more time. You can also ask for more time by emailing ofo.extensions@eeoc.gov. Again, your email request must be sent before November 21, 2024.

2.   The Agency may submit a statement in opposition to your appeal (this step is optional).

     The Agency has the option of submitting a statement in opposition to your appeal. If the Agency decides to send a statement, it must do so within 30 days from the day the Agency received your statement in support of your appeal, or if you did not file a brief, within 60 days of the agency's notice of your appeal. Using your EEOC Public Portal account, you will be able to log in and see the Agency's statement in opposition to your appeal.

3. The agency will upload the Report of Investigation, case file, and hearing record (if a hearing was held) to OFO. This documentation will also be available for you to see using your EEOC Public Portal account.

4. Your appeal will be assigned to an OFO attorney to review and draft a decision.

5. The EEOC Office of Federal Operations will send you a decision on your appeal.

   OFO will send you the appellate decision by first class mail. After mailing the decision, OFO will upload a copy of that decision to the EEOC Public Portal for you to view. To preserve your anonymity, our decision will have a random pseudonym (fictitious name) listed in the caption under your real name. The published decision will only use the pseudonym - not your real name. But if you prefer that OFO publish the decision under your real name, you may notify OFO via the EEOC Public Portal.

**Things to do while you wait for a decision**

1. Please update OFO on changes to your contact information.

   If you change your contact information, such as your name or mailing address, please log in to the EEOC Public Portal to update OFO on your changes, so we can ensure that you will receive our appellate decision.

2. Please let OFO know if you choose to opt out of the administrative appellate process by filing a civil action.

   Generally, for most types of pending appeals, you can opt out of the administrative appellate process and file a lawsuit in court, if OFO does not issue an appellate decision within 180 days from the day you filed your appeal. Because filing a civil action terminates EEOC processing of your appeal, please let us know when you do file a civil action so we can administratively close your appeal. You can let us know by logging in to the EEOC Public Portal and uploading a document, saying that you have filed a lawsuit in court and wish to opt out of the federal sector administrative process. You will then receive a confirmation letter that your administrative appeal is closed.

**Helpful Resources**

- EEOC Management Directive 110, Chapters 9 and 10: https://www.eeoc.gov/federal/directives/md110.cfm.

- The Commission's appellate regulations are found in Title 29 of the Code of Federal Regulations at Part 1614, or on the web at https://www.gpo.gov/fdsys/pkg/CFR-2014-title29-vol4/xml/CFR-2014-title29-vol4-part1614.xml. We urge you to review these regulations.

If you have questions about the processing of your appeal, please call the EEOC Call Center at 1-800-669-4000, or write OFO's Officer of the Day at ofo.eeoc@eeoc.gov.

Sincerely,

Compliance and Control Division
Office of Federal Operations

*This email serves as EEOC's official notification for, and acknowledgment of EEOC 03 No. 2025000324. Please do not reply to this email.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

November 5, 2024

Maria Manga
Via Email
ritastar2018@gmail.com

RE:    <u>Maria Manga v. Small Business Administration</u>
Docket No. 2025000324

Dear Ms. Manga:

Our records show that on November 1, 2024, you sent via email a request for an extension of time to file a statement or brief in support of the above-referenced appeal.

To ensure that the Office of Federal Operations (OFO) can perform its mission of resolving federal sector appeals as efficiently as possible, we are only granting parties' requests for extensions of time to file a brief when the requesting party can demonstrate that they were incapacitated or subjected to some other serious intervening event during the regulatory time frame for doing so. On the rare occasions that OFO deems that an extension is warranted, it will usually be limited to ten (10) business days.

You justified your request for an extension by noting you are pro se and need additional time to gather information for the submission of your brief. In this instance, we find that an extension is warranted, however it will be limited to ten (10) business days. Accordingly, your extension has been granted until December 5, 2024. Any statement or brief you submit must be uploaded in the EEOC Public Portal, postmarked, or received by the Commission by that date with a copy sent to Small Business Administration (unless you use the Public Portal, in which case separate service to the agency is not required). Please note that no further extensions will be granted.

Sincerely,

/s/ Terri S. Gimbrere

Terri S. Gimbrere
Assistant Director
Intake, Communication and Enforcement Division
Office of Federal Operations

cc:    Small Business Administration
       Claudine Landry, Esq. – claudine.landry@sba.gov
       Obed Morales, Eq. - Obed.morales@sba.gov



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

November 5, 2024

Gaye T. Walker, Assistant Administrator
 Equal Employment Opportunity and Civil Rights Compliance
Small Business Administration
Via Email
Gaye.walker@sba.gov

      RE:    Maria Manga v. Small Business Administration
               Docket No. 2025000324

Dear Ms. Walker:

On November 1, 2024, complainant sent via email a request for an extension of time to file a statement or brief in support of the above-referenced appeal. The Commission has granted Complainant's request and extended her submission date until December 5, 2024. Accordingly, the time frame for any statement or brief by the agency has been extended until January 6, 2025. If the agency elects to file a brief, it must be uploaded into the Federal Sector EEO Portal (FedSEP) by that date, with a copy sent to Complainant.

                        Sincerely,

                        /s/ Terri S. Gimbrere

                        Terri S. Gimbrere
                        Assistant Director
                        Intake, Communication and Enforcement Division
                        Office of Federal Operations

 **Gmail**                                           **Maria Manga <ritastar2018@gmail.com>**

---

## New-Acknowledgement of Appeal Request 2025000324

1 message

---

**EEOC** <no-reply@service.eeoc.gov>                              Tue, Oct 22, 2024 at 2:59 PM
To: ritastar2018@gmail.com

**U.S. Equal Employment Opportunity Commission**
**Office of Federal Operations**

Oct 22, 2024

Maria Manga
615 Sheridan Street NW
WASHINGTON,DC,20011
USA

### Acknowledgment of Appeal Request through the EEOC Public Portal

Dear Maria Manga:

Thank you for filing an appeal with the EEOC Office of Federal Operations (OFO). We have received your 10/22/2024 appeal against the Small Business Administration. The routing number associated with your appeal is: 2025000324. Please reference this routing number whenever you submit documents or correspond with OFO in the future.
Once OFO has ensured that your appeal is properly before us, OFO will email the respondent agency (and you) an acknowledgment notice very similar to this one. With the exception noted below about challenging a decision by the U.S. Merit Systems Protection Board, the time frame for you to submit an optional statement in support of your appeal starts running on the date you filed this appeal: 10/22/2024.

**Next Steps**

1. You may submit a statement in support of your appeal, if you have not already done so (this step is optional). Generally, you may submit a supporting statement by 11/21/2024. But there is an exception: if you asked us to review a decision by the U.S. Merit Systems Protection Board (MSPB), you needed to submit your supporting statement at the same time you requested us to review the MSPB's decision.

   The most popular ways to send a statement in support of an appeal (except a petition to review a MSPB decision) are:

   - EEOC Public Portal. You can log in to the EEOC Public Portal, select the appeal with the appropriate routing number, and electronically submit your statement. The EEOC Public Portal will then automatically serve your supporting statement to the agency.
   - Mail. You can mail your statement to: Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013. We will use the postmarked date as the filing date for your statement. If you mail us your supporting statement, you must also mail and serve the Agency with a copy of your statement.

   If you need more time to send us your statement, you can ask for more time by logging in to the EEOC Public Portal and electronically submit a request for an extension. Your extension request must be electronically submitted before 11/21/2024. In your request, you should describe why you need more time. You can also ask for more time by emailing ofo.extensions@eeoc.gov. Again, your email request must be sent before 11/21/2024.

2. The Agency may submit a statement in opposition to your appeal (this step is optional). The Agency has the option of submitting a statement in opposition to your appeal. If the Agency decides to send a statement, it must do so within 30 days from the day the Agency received your statement in support of your appeal. Using your EEOC Public Portal account, you will be able to log in and see the Agency's statement in opposition to your appeal.

# U.S. Equal Employment Opportunity Commission
## Office of Federal Operations

Oct 22, 2024

Maria Manga
615 Sheridan Street NW
WASHINGTON,DC,20011
USA

### Acknowledgment of Appeal Request through the EEOC Public Portal

Dear Maria Manga:

Thank you for filing an appeal with the EEOC Office of Federal Operations (OFO) through the EEOC Public Portal. We have received your 10/22/2024 appeal against the Small Business Administration. The number associated with your appeal is: 2025000324. Please reference this number whenever you submit documents or correspond with OFO in the future.

Once OFO has ensured that your appeal is properly before us, OFO will email the respondent agency (and you) an acknowledgment notice very similar to this one. With the exception noted below about challenging a decision by the U.S. Merit Systems Protection Board, the time frame for you to submit an optional statement in support of your appeal starts running on the date you filed this appeal: 10/22/2024

**Next Steps**

1. You may submit a statement in support of your appeal, if you have not already done so (this step is optional).

   Generally, you may submit a supporting statement by 11/21/2024. But there is an exception: if you asked us to review a decision by the U.S. Merit Systems Protection Board (MSPB), you needed to submit your supporting statement at the same time you requested us to review the MSPB's decision.

   The most popular ways to send a statement in support of an appeal (except a petition to review a MSPB decision) are:

   • EEOC Public Portal. You can log in to the EEOC Public Portal, select the appeal with the appropriate routing number, and electronically submit your statement. The EEOC Public Portal will then automatically serve your supporting statement to the agency.

   • Mail. You can mail your statement to: Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, D.C. 20013. We will use the postmarked date as the filing date for your statement. If you mail us your supporting statement, you must also mail and serve the Agency with a copy of your statement.

   If you need more time to send us your statement, you can ask for more time by logging in to the EEOC Public Portal and electronically submit a request for an extension. Your extension request must be electronically submitted before 11/21/2024. In your request, you should describe why you need more time. You can also ask for more time by emailing ofo.extensions@eeoc.gov. Again, your email request must be sent before 11/21/2024.

RE: EEOC Appeal No. 2025000324

1. The Agency may submit a statement in opposition to your appeal (this step is optional).

   The Agency has the option of submitting a statement in opposition to your appeal. If the Agency decides to send a statement, it must do so within 30 days from the day the Agency received your statement in support of your appeal. Using your EEOC Public Portal account, you will be able to log in and see the Agency's statement in opposition to your appeal.

2. The Agency will upload the Report of Investigation, case file, and hearing record (if a hearing was held) to OFO.  This documentation will also be available for you to see using your EEOC Public Portal account.

3. Your appeal will be assigned to an OFO attorney to review and draft a decision.

4. The EEOC Office of Federal Operations will send you a decision on your appeal.

   OFO will send you the appellate decision by first class mail. After mailing the decision, OFO will upload a copy of that decision to the EEOC Public Portal for you to view. To preserve your anonymity, our decision will have a random pseudonym (fictitious name) listed in the caption under your real name. The published decision will only use the pseudonym — not your real name. But if you prefer that OFO publish the decision under your real name, you may notify OFO via the EEOC Public Portal.

**Things to do while you wait for a decision**

1. Please update OFO on changes to your contact information.

   If you change your contact information, such as your name or mailing address, please log in to the EEOC Public Portal to update OFO on your changes, so we can ensure that you will receive our appellate decision.

2. Please let OFO know if you choose to opt out of the administrative appellate process by filing a civil action.

   Generally, for most types of pending appeals, you can opt out of the administrative appellate process and file a lawsuit in court, if OFO does not issue an appellate decision within 180 days from the day you filed your appeal. Because filing a civil action terminates EEOC processing of your appeal, please let us know when you do file a civil action so we can administratively close your appeal. You can let us know by logging in to the EEOC Public Portal and uploading a document, saying that you have filed a lawsuit in court and wish to opt out of the federal sector administrative process. You will then receive a confirmation letter that your administrative appeal is closed.

RE: EEOC Appeal No. 2025000324

**Helpful Resources**

- EEOC Management Directive 110, Chapters 9 and 10:
  https://www.eeoc.gov/federal/directives/md110.cfm.

- The Commission's appellate regulations are found in Title 29 of the Code
  of Federal Regulations at Part 1614, or on the web at
  https://www.gpo.gov/fdsys/pkg/CFR-2014-title29-vol4/xml/CFR-2014-title29-
  vol4-part1614.xml. We urge you to review these regulations.

  If you have questions about the processing of your appeal, please call the
  EEOC Call Center at 1-800-669-4000, or write OFO's Officer of the Day at
  ofo.eeoc@eeoc.gov.


                        Sincerely,

                        Compliance and Control Division
                        Office of Federal Operations

 Gmail

## Re: Motion of Enforcement document

4 messages

---

**Kevin Zieleniewski** <kevin.zielen@alspc.com>                    Wed, Sep 11, 2024 at 1:43 PM
To: Maria Manga <ritastar2018@gmail.com>

Hi, Maria it is being filed with the MSPB in DC as instructed in the Final Order.

Please let me know if you filled out the following:

https://www.nfc.usda.gov/Publications/Forms/343a.pdf

Thanks

> On Wednesday, September 11, 2024 at 01:34:57 PM EDT, Maria Manga <ritastar2018@gmail.com> wrote:
>
>
> Kevin,
> Please let me know what address you mailed it to. Also, let me know what next steps are.  Did you get any more correspondence from SBA?
>
> Thank you.
> Maria-

---

**MAILER-DAEMON@yahoo.com** <MAILER-DAEMON@yahoo.com>              Wed, Sep 11, 2024 at 7:39 PM
To: ritastar2018@gmail.com

I'm afraid I wasn't able to deliver the following message.
This is a permanent error; I've given up. Sorry it didn't work out.

Subject: Motion of Enforcement document
To: `kevin.zielen@alspc.com

— Below this line is a copy of the message.


———— Forwarded message ————
From: Maria Manga <ritastar2018@gmail.com>
To: Kevin Zieleniewski <kevin.zielen@alspc.com>, `kevin.zielen@alspc.com, Kevin Zielen <kzieleni@yahoo.com>
Cc:
Bcc:
Date: Wed, 11 Sep 2024 13:34:40 -0400
Subject: Motion of Enforcement document
Kevin,
Please let me know what address you mailed it to. Also, let me know what next steps are.  Did you get any more correspondence from SBA?

Thank you.
Maria-

---

**Kevin Zieleniewski** <kevin.zielen@alspc.com>                    Thu, Sep 12, 2024 at 3:11 PM
To: Maria Manga <ritastar2018@gmail.com>